Chief Justice Robertsor
delivered the Opinion of the Court,
Henry C. Moore, who died in Harrison county in this state, in 1832, by his last will, regularly proved and admitted.to record in the same year and county, empowered his executors to sell any or all of his estate for the benefit of his wife, and only surviving child, Thomas W. Moore, then an infant; directed that his said son should have two thirds of his estate whenever he should attain twenty-one years of age, and his wife the other third for life, remainder to his son; and then made the following provision:—“In case my son Thomas should “ depart this life before he arrives at age, then the es- “ tate devised to him I desire may be converted into a “ fund for educating some poor orphans for this county “ (Harrison,) to be selected by the County Court, who “ are the guardians of such, and to be confined to such “ asare not able to educate themselves—that it may do “ as much good in that way as it can, I desire the funds “ shall be taken and loaned out at interest, so as to be *355 tt rendered a perpetual fund, and the interest only to be “ applied to their tuition—thereby affording a partial “ good to as many orphans as the scanty pittance will allow.”
The appellants, as heirs and distributees of Thomas W. Moore—who, whilst an infant, died in a short time after the demise of the testator—claiming the estate devised to him, because, as they alleged, the legal title, in the event of his death under twenty-one years oí age, descended to them, and because, as they argued, the contingent devise to the use of the poor orphans of Harrison county was void for want of certainty~^filed a bill in Chancery, in 1834, against the County Court of Harrison and against the executors of the will of Henry C. Moore, for establishing and enforcing their claim,.
The relief sought by the bill was resisted by the an,swers, on the ground that the devise for the benefit, of , . , tt . . . ,. the poor orphans ot Harrison is neither uncertain, nor, on any other account, void, but is good, and may be f ° ' ' «. available.
The Circuit Court having dismissed the bill—Ahis ap- ° * peal seeks the reversal of that decree, and. the appellants insist here, as in the Court below, that the. devise for the use of the poor orphans is void, and that, therefore, they themselves, as heirs and distributees, are entitled to the whole estate thus undisposed of by the will.
The case, as thus presented, involves questions both, delicate and difficult, hitherto undecided, and but little considered by this court, and which, therefore., are felt, to be peculiarly interesting and important..
Although the devise has not been, written w.ith proper skill or suitable precision or care, yet the object and. general intention of the testator cannot be seriously doubted. It is sufficiently clear that he intended, in the event of his son’s death under twenty-one years of age,, that his executors should convert the estate devised to that son into money; and it seems to us but reasonable and consistent to infer, that the fund, when thus fixed, should be deposited with the County Court of Harrison, i.n. trust, for the education, of such poor orphans.of that. *356 county, as should be ascertained to be unable to educate themselves, and as should be designated as fit beneficiaries, from time to time, by the justices of the said Court, who should keep the principal on loan and apply the interest to the purposes of the trust. No other depository of the fund having been designated, we feel authorized to infer, that the testator intended that the Court charged with the distidbution of the proceeds, and with the. selection and superintendence of the recipients, should have the possession of the fund and the legal right to control if. And consequently, we deem the county court a legatee of - the whole trust fund.
Where 5s "the common-law repetmtiesdoes^ot ' ” ‘
The British mor.t main acts have not been held tp be in force in Ya. or Ken. The Ken. statute of wills does ijot forbid devts'es to corporations; and if the County Court, could hot take the devise {supra). still the power of appointment might' be executed, So-Held, that the devise {supra) to the county court (of a fund, t.o educate poor orphans) is not illegal. Nor void, (as the court incline to think)' for uncertainty, ^vben - tested ...by the rules of the common law alone; but maybe enforced independently of any English statute'. For—
*356 Thus considering the devise—the first question to be considered, is whether it is either illegal or void, without any aid from the. statute of charitable uses, of the, 49»d of-Elizabeth.
land is not locked up, but the only fund secured *s money! which is, by the direction of the testator and according to the nature and objects of the trust, to be kePt ™ active and constant circulation—the common law repugnance to perpetuities can have no application.
Nor do any of the British mortmain acts affect the case: jfc'sí-r-bécause they were chiefl-y, if not altogether, local in their policy and operation, and were therefore nevar recognized as the law of Virginia or Kentucky; and, second—because none of them enacted prior to ’76, embraced such a devise as that which wrn are now considering; unless the British statute of wills should be deemed,'in one respect, a mortmain act; and if so much of it as prohibited devises to corporate bodies should be so. considered, still it can have no effect, because our statute of wills contains no such inhibition or exception; and besides, if the County Court of Harrison could not take the money, yet it would be competent to execute the power of appointment, and then the only question would be whether there is an available trust created by the will, which a Court of Equity might protect and execute. Hence it seems to us, that there is nothing illegal in the devise. ' ' '
A court of equity, without the aid of any statute, may enforce a trust, whenever it is so defined, or described by the donor, as to enablq the court, consistently with the rules of law, to ascertain, and apply it to, the objects intended.—And where, in such case, there is no trustee appointed by the will, the court will act as trustee, & appoint one if necessai7».
And we are strongly inclined to the opinion that the deviséis not void for uncertainty,if tested by the doctrines of the common law alone, and might be enforced by a Court of Equity, under its general jurisdiction over trusts, and the execution of powers connected with beneficial interests. Such a jurisdiction, upon original bill, whether the trust was deemed a charity or not, had been established in the time of Lord Ellesmere, at least five years prior to the enactment of the statute of 43d Elizabeth. Philadelphia Baptist Association v. Smith and Robertson, 3 Peters, 488 to 493; Orphan Assylum Society v. McCartee, 9 Cowen's New York Rep. 437; Witman v. Lex, 17 Sargeant and Rawle, 88; Attorney General v. Mayor of Dublin, by Lord Redesdale, 1 Bligh’s Rep. 347; Dartmouth College v. Woodward, 4 Wheaton 476; Attorney Gen. v. Utica Ins. Com. 2 Johns. Chy. Rep. 389; Baptist Association v. Haris Ex’rs. 4 Cond. Rep. 383.
These cases, and many others which might be super? added, show that, independently of the statute of 43d Elizabeth, a Court of Equity might enforce a trust, whenever it was defined by the donor, or was so described by him as to enable, the court, consistently with the rules of law, to ascertain and apply it to the objects intended.
In the case of Inglis v. The Trustees of the Sailor’s, Snug Harbor, 3 Peters, 112, the Supreme Court sustained, upon common law principles, a devise to the Chancellor of New York and to the Mayor and Recorder, &c. of the city of New York, of estate in. trust for building a Marine Hospital for the support of infirm sailors, fp. bp. called—“Y/ie Sailor’s Snug Harbor,’’ to be under the superintendence and visatorial control of the trustees and their successors, with a request that they should be incorporated by an act of the Legislature, if they could not take and act in a corporate capacity without such a legislative enactment. The Legislature of Ne.vy York having, about a year after the testator’s de.ath, ipporpprated the persons named as Trustees, and the object of the trust, that is, infirm seamen, to be selected by the Trustees, being deemed sufficiently certain for judicial action, the Court decided that the devise to persons *358 afterwards to be incorporated was good as an executory devise; and that the will so far specified the objects of the trust as to make it the duty of the Trustees to act, as directed, for the benefit of certain persons who might, according to the will, manifest their beneficial interests, and claim the aid and protection of a Court of Equity; and that, therefore, the devise was not, even, according to the common law, void for want of capacity in the trustees to take, or for uncertainty as to the cestui que trusts, or the nature, extent and object of the testator’s bounty. And, in that case, the Court said, as had been before said, in 2 Vesey jr. 335: “Wherever a person by “ will gives property, and points out the object, the prop- “ erty and the way in which it shall go, a trust is crea- “ ted; unless he shows clearly that his desire expressed “ is to be controlled by the trustee, and that he shall “ have an option to defeat it.” And the court might, upon well established principles of equity, have added that, when such a trust is created, a Court of Equity will support and enforce it, even if the donor had appointed no trustee, and had let the legal title go to his heirs; for it is well settled, that where there is a beneficial trust, a Court of Equity will act as trustee, or appoint one if necessary, for effectuating the objects of the grantor.
Now, it seems to us, that the executors in this case, are trustees, to “sell and convey” the estate and convert it into money; and that the County Court of Harrison is a trustee of the fund when converted into money, with full power to control and appropriate it, not according to its arbitrary discretion, but according to the declared intention of the testator, for the education of such poor orphans of Harrison county as may be unable to educate themselves.. And it seems to us, that the testator’s intentions and the objects of his bounty are sufficiently certain for judicial recognition and enforcement. And moreover, we are of the opinion that, even if the legal title should be considered pndevised, powers are given to the executors and to the County Court, and beneficial interest, dependent on the execution of those powers, are vested in a designated class of persons, *359 ■which a Court of Equity may aid and protect, according to the doctrines of the common law.
If there is not such certainty as to the beneficiaries, that a Court of Equity may enforce the trust, still, the ex’ors and trustees may execute the powers confided to them; and the court will not interpose to prevent it, on the application of the heirs.
A naked power may be voluntarily executed;& a power coupled with a trust may be enforced by a Court of Equity, when the objects of the trust are certain, or ascertainable.
The Englishstatute of charitable uses—43d Eliz. gives validity to numerous charitable gifts and bequests which would otherwise be void, and so far repeals the mortmain acts. It embraces devises to poor orphans; and this case of a devise for the purpose ofeducatingpoor orphans, is within its provisions. That statute, so far as relates to its first object— giving validity to gifts for charitable uses, is in force in this coun try. Tho’, so far as relates to the remedy, it is not applicable to our institutions, and therefore not in force here.
And we are also of the opinion that, if there is not sufficient certainty, as to the beneficiaries, to enable a Court of Equity to enforce the execution of the power, nevertheless, the executors and the County Court may execute the powers confided to them, and a Court of Equity should not interpose to prevent it, on the application of the heirs. Porter's case, 1 Co. Rep. 22. This is altogether unlike a. devise to persons incapable of taking, or to persons not sufficiently identified, and without any trust, or the intervention of a trustee, or of a power. Even a naked power may be voluntarily executed; and a power coupled with a trust or beneficial interest may be enforced by a Court of Equity, when the nature and objects of the trust are certain, or may be rendered certain. The devise, then, in this case, not being void, in consequence of vagueness, the appellants appear to have had no right to claim the interposition of •a Court of Equity, for preventing the execution of a power not void or repugnant to law.
But, if we are mistaken in the foregoing conclusions, we do “not doubt that the application of the statute of 43d Elizabeth, would cure any defect in the devise, as tested by the common law, and make it valid and available; and we are of the opinion that that statute is in force here to a sufficient extent at least for all the purposes of this case.
According to the civil law, gifts by devise or otherwise, to charitable uses were peculiarly favored, and were sustained cypres, even though the object was general and undefined, or the donee uncertain or incapable of taking, so that, if there had been no charity, the gift would have been illegal or void.
In England, the King, as parens patries, had the prerogative right of visitation and of consequential curation, control and appropriation of charities, when there was no charter or writing devolving the visitorial right on another, or reserving it to the donor. And this regal prerogative, with some other curative powers inherent *360 in the crown, was delegated to the Chancellor of England, in his ordinary ministerial capacity, as the keeper1 of the great áeal and official organ of the King.
The extent °f the Power of the King, or of his representative, the Chancellor, over charities, it would be difficult, perhaps impossible, to ascertain with satisfactory certainty. Antiquarian research has left the subject in some doubt and obscurity; and an investigation of it now would be more curious than useful.
It seems clear, however, that prior to the 43d Elizabeth; though the Chancellor had assumed; to some extent, equitable jurisdiction in cases of charity, it was not on account of the charity, but only because there was a trust which, being valid according to the common law, might be protected and enforced by a Court of Equity; The Chancellor, in his extraordinary character asa Judge in Equity, had no peculiar jurisdiction over charities, and the more probable and prevalent juridical deduction is; that the Chancellor when, prior to the 43d Elizabeth, he exercised equitable power over charities, did not do so according to the doctrines of the civil law, peculiar to charities, but only according to the principles of the cbmmon law, adopted from the civil code, respect* ing trusts; and, of course, he could not enforce a charitable trust, if, according to the doctrines of -the common law, it was either illegal or void fbr indefiniteness or vague generality; nor could he apply the'charity to any other purpose than that designated by the donor.
The better opinion seems, also, to be, that neither the Crown, nor the Chancellor under his delegated authority; ought to enforce or appropriate a charitable legacy or gift which was not valid. It is not admitted here, that prerogative could, according to the common law, in that class of cases more than in all others, violate the private legal rights of those who, by operation of-law, were entitled to that which had been illegally or abortively dedicated to charity. See the reasoning of Chief Justice Marshall, in the Baptist Association vs. Hart's Executors, supra.
It seems to be understood that, two objects -were contemplated in enacting the statute of 43d Elizabeth: first— *361 to apply some 'of the doctrines of the civil law to eertain charitable donations enumerated in the statute, and thus to render such gifts valid, in many instances, although they would have been void had there been no charity, and even with the charity, according to the common law: second—to afford a summary and effectual remedy by commissioners to be appointed by the Chancellor as the executive representative of the Crown.
It seems to be understood, also, that since the enactment of that statute, nothing has been deemed a charity which is not embraced within its constructive import; and that since that time, jurisdiction in Equity has been assumed and maintained over cases provided for by the Statute. Attorney General vs. Newman, 1 Lev. 284; West vs. Knight, 1 Ch. Ca. 134; Fonblanque (Am’r. Ed.) 493; 3 Peters, 488-9.
This statute has been construed in England as repealing, as to the cases within its scope, the mortmain acts; as making valid and availing charitable donations which would have been ineffectual at common law, in consequence of vagueness as to the object or the beneficiary, and also, as authorizing the appropriation cy pres of a •charity to some suitable and congenial purpose of charity, not inconsistent with the general intent of the donor» and when no specific application has been directed by him» or that which had been designated failed or w7as illegal.
The statute embra'ces devises to the use of poor orphans, and therefore applies to this case, if it be in force here. The only remaining question, therefore, is whether it is in force, and to what extent?]
The first object of the statute being general and beneficent, and not local or peculiar to the policy of England, when the Virginia colony was first planted at Jamestown, under the auspices of Smith, in 1607, we should presume that so much of the statute as was applicable was imported and recognized as a part of the laws of the mother country claimed by the colonist in their provincial settlement. As the statute was in force at and before 16,06 (the date of the Virginia charter) there was no necessity for re-enacting it in the colony, as there would have been, had it been enacted in Eng *362 land since the 4th of James L the year of the charter. Nor have we ascertained, or made much effort to .ascertain, whether, and if at all, how far it may have been re-enacted by the colonial legislature-; because, for the J . general reason already suggested, we presume that it was considered as in force, to the extent of its first and principal object, without any express recognition of it by the local legislature.
As to the remedy it prescribed-*—and which, as already shown, was, to a great 'extent, only cumulative or altejnative—we infer that it was never deemed to be in force in Virginia, because there being no such officer there as the Lord Chancellor in his representative character, so far it was inapplicable-.
But if, to the extent suggested, the statute was not imported by the colony, we should be of the opinion that, as it seems to that extent, to have been general and applicable to the colony, as well as to the mother country, it was adopted by the ordinance of 1776, in which Virginia declared, in substance, that the common law of England and all statutes or acts of Parliament in- aid of the common law prior to the 4th year of James I. and which were of a general nature, and not local to England, should be considered as in full force in that Commonwealth, until modified or repealed. And this idea is corroberated by the fact that, the Supreme Court of the United States said, in 3 Peters, 486, that the statute of 43d Elizabeth was repealed in Virginia in 1792. We have not "examined whether it was expressly repealed; but if, as elsewhere said, it was only constructively repealed, it must of course, have been at least constructively in force before its repeal.
That repeal having been since the 1st of June, 1792, when Kentucy became a separate state, and she having, by her constitution, adopted the common law and general statutes in force in Virginia at the time of the separation, we are brought to the conclusion, that the statute of 43d Elizabeth, to the extent of its first and general object, as to the validity of charitable gifts, is a portion of' the law of this state. We are therefore disposed to adhere to, and reiterate the same opinion announced in *363 general terms, in the case of Gass and Bonta vs. The Shakers, 2 Dana, 177.
Whore a devise is valid by the statute, a court of equity should not interfere against the cestui que trusts; and therefore, if the authority of the ch’r of England, since the statute, ■werenotjudieial, but only a prerogative right, that circumstance would not avail the compt’s in this case.
In England, the King, by virtue of his prerogative, & the ch’r by virtue of the power delegated to him by the crown, was the visitor and superintendent of all eleemosynary corporations where no other person had the right. And since the 43 Eliz. as that statute been construed, the power ^regtlyen larged, extends, (1.) to cases in which a general purpose of charity is manifested, without designating its object or modé of administration; (2.) to cases in which there is a definite object, p.r a particular mode of applying it, and either has failed; (3.) where the fund is more than adequate. In all such cases, the ch’r (by the application’of the civil law doctrine of cy pres) \vill not only support the charitable intention, bqt will apply it to some kindred object of charity. " ' ■
It is argued, however, that the jurisdiction of theChan-r cellor of England over charities, since the 43d Eliza-, beth, has been altogether personal and delegated, and was never exercised by him in his judicial character, as a Judge in Equity.
Were this conceded, the consequence would be unavailing to the appellants; because, if, by the operation of the statute, the devise is valid, a Court of Equity should not interfere against the cestui que trust, and prevent their enjoying its benefits, as far as they may, under the power given by the will. But, as already stated, we are of the opinion, that a Court of Equity had, and has, some jurisdiction under the statute, and that jurisdiction would, as we think, apply availably -to this case, were the interposition of a Court of Equity necessary for enforcing the trust, or preventing a mal-administration of it.
Prior to the enactment of the statute, the King was the visitor of all eleemosynary corporations, when no other was appointed regularly or legally, and had also, as before stated, the prerogative in the nature of the right of visitation, of superintending charities in many, if not in all cases, in which that right was not otherwise secured. This power had been delegated to the Chancellor as the agent of the crown; and after the 43d Elizabeth, however it might have been before, implied a plenary discretion, according to the doctrines of the civil law, restrained only by the terms of the charter, or the expressed will of the donor. And chiefly by the application of those doctrines, the statute received a construction sin-* gularly latitudinary, and the power of the. Chancellor was greatly extended: so as to embrace, first—cases in which a general purpose of charity is manifested, without a designation of its objects, or of the mode of apir ministration; second—when a definite object of charity is specified, or a particular mode of applying, it is pro *364 vided, and the prescribed object or mode shall have failed or become impracticable; and, third—when the fund is more than adequate to the specified purpose. In all these classes of cases, the Chancellor, by the application of the. civil law doctrine of cy pres, will, not only support the charitable intention, but will apply it by analogy to some kindred or proximate object of charity; as the following adjudged cases will show. Moggridge vs. Thackwell, 7 Ves. 75-86; Attorney General vs. Matthews, 2 Levinz, 167; Attorney General vs. Siderfin, 1 Vernon, 224; Clifford vs. Francis, Freeman, C. C. 330; Paice vs. the Archbishop of Canterbury, 14 Ves. 372; De Costa vs. De Pas, Ambler, 228; Attorney General vs. Bax'er, 1 Ver. 247; Attorney General vs. Clarke, Amb. 422; White vs. White, 7 Ves. 423; Powell vs. Attorney General, 3 Merivale, 42; Attorney General vs. Hickman, 2 Eq. ca. ab. 193; Baylis vs. Attorney General, 2 Atk. 239; Attorney General vs. Herrick, Amb. 712; Attorney General vs. Gleg, 1 Atk. 356; Cook vs. Buckenfield, 2 Ib. 562; Attorney General vs. City of London, 3 Brown's Chy. Cases, 171; Attorney General vs. Bishop of Oxford, 1 Bro. C. C. 444; Hereford vs. Adams, 7 Ves. 324; Attorney General vs. Earl of Winchelsea, 3 Bro. C. C. 373.
In England there are donations to charitable' uses (described in the text) as to which the chancellor, exercises a delegated power' and authority, by virtue of the prerogative of the crown, not a judicial power. — Of cases of that sort, courts of equity here could fake nq cognizance, ' because their powers áre entirely judicial, or regulated by law! and "‘they have no prerogative powers.— But there are other cases (see the text) as to which the ch’r, sitting as a jurige in equity, will interpose on the giound of trust. In certain cases (supra, unless the testator restricts his bounty to some geneial object within the statute, the legacy or gilt is void, and cannot be applied by King or chancellor.—In others, if there'is a trust availableatcpmmon law, it is pot material whether the charity is within the statute. But if there is no such trust, and the object of the bounty be col lective, and consequently indefinite and incapable of taking without the aid of the statute: then, unless the selected object he such as the statute recognizes as a charity, the gift, or legacy, will be deemed void; but if the object lie within the statute, the gift or legacy will be val id, and may be upheld by the chancellor—here, aswellas in England.
*364 In Moggridge vs. Thackwell, ubi supra, Lord Eldon recognizes the three classes of cases which the foregoing citations sustain, and we will not swell this opinion by an unnecessary repetition of the substance of each reported case. But will only state the general conclusions which they have concurred in establishing; and that is; First. That when the charity is not given to trustees, and no particular object is designated, nor any person appointed to select the object, the King, as parens patria, appoints the object, under his sign manuel, and the Chancellor, as keeper of the great seal, directs the application, by the Attorney General, to the crown, to make the appointment. In this class of cases the Chancellor does not act judicially as a Court of Equity. Second. When the donor refers to a future selection of the object by himself, and dies without making any selection, or when trustees, appointed for that purpose, die without acting, or when the fund is superfluous, the Chancellor, *365 not only will support the charity, but will apply it according to a scheme -to be submitted to the master in Chancery. Third. When an ascertainable object is designated by the donor, in general or collective terms, as the poor of a given county or parish, or when a person is appointed by him to select a described portion, or kind, or number from a designated class, the Chancellor, sitting as Judge in Equity, will interpose on the ground of trust.
In the two first classes, unless the donor manifest an intention to restrict his bounty to some general object of chqrity embraced by the statute, the legacy or gift will be void, and neither the King nor the Chancellor can make any application of it. In the third class, if there be an available trust according to the common lawj it is not material whether there be a charity within the statute; but if there be no trust that would be good at common law, and the object of the bounty be collective and consequently indefinite and incapable of taking without the aid of the statute—as, for example, a described class of unincorporated persons, as the mechanics of a particular place, the members of a specified church, or the poor of a designated town, or parish, or county—then unless the selected object be such as the statute recognizes as charity, the common law, and not the statute applies, and the legacy or gift will, of course, be deemed void; but if the object be a charity according to the statute, the gift or legacy will be deemed valid, and may bo upheld or enforced by a Court of Equity, as an implied trust, made good and effectual by the operation of the statute.
Now, as we have no such officer here as the Chancellor of England, and as our Courts of Chancery have no other jurisdiction than that of Courts of Equity, and no other power than that which is judicial or regulated by law, it is evident that they have no cognizance of any case embraced in the first of the foregoing classifications. And we do not admit that the Commonwealth, as parens patries, can rightfully interfere unless there be an escheat to her; and then she may become absolute and beneficial owner. Rights here are regulated by law; and if any person have a claim to property inef *366 fectually dedicated to charity, the Commonwealth has no prerogative right to decide on that claim, and dispose of the property, as the King of England has been permitted to do. See Attorney General vs. United Ins. Co. 2 Johnson's Chy. Reps. 386-7. In the King vs. the Master and Fellows of St. Catherine's Hall Cambridge, 4 Term Reps. 233, the Court of King’s Bench decided, that it had no jurisdiction, because the right of visitation belonged to the King, whose discretion was not controlled by law: and therefore, the court, acting, not according to discretion, but law, could take no cognizance.
The cy pres doe trine is not judicial,—except where there is an available charity to an identified object, anda particular mode is prescribed which is not available. Then a court of equity may substitute, or sanction, some other mode to effectuate the declared intention of the donor; but cannot declare an object for him,
A court may act judicially in such cases, as long as it effectuates the intentions of the donor: but does not act judicially when it attempts, to apply to a sper cific object se-1 lected by itself, I what the donor had dedicated to charity generally.
Held, that ihede vise in this case — that testator’s estate, in a certain contingency that did happen, should be converted into a fund for the education of some poor orphans ofliiscoun ty, to he selected l.y the county court, (see the will, p 354) is a valid and effectual deviseat com mon law, &is also, one to which the statute 43 Eliz. applies; #• of which a court of equity, in this state, may take judicial cognizance, and carry into effect, according to the intention of the tes tator.
*366 The prerogativo cases in England are not judicial. And we should doubt whether a Court of Equity in this country would have any jurisdiction over any of the second class of the last enumerated cases. We are satisfied, that the cy-pres doctrine of England is not, or should not be, a judicial doctrine, except in one kind of case; and that is, where there is an available charity to an identified or ascertainable object, and a particular mode, inadequate, illegal, or inappropriate, or which happens to fail, has been prescribed. In such a case, a Court of Equity may substitute or sanction any other mode that may be lawful and suitable, and will effectuate the declared intention of the donor, and not arbitrarily and in the dark, presuming on his motives or wishes, declare an object for him. A court may act judicially as long as it effectuates the lawful intention of the donor. But it does not act judicially when it applies his bounty to a specific object of charity, selected by itself merely because he had dedicated it to charity generally, or to a specified purpose which cannot be effectuated; for the Court cannot know or decide, that he would have been willing that it should be applied to the object to which the Judge, in the plenitude of his unregulated discretion and peculiar benevolence, has seen fit to decree its appropriation—whereby ho, and not the donor, in effect and at last, creates the charity.
But it is not necessary, or even fitting, that we should now decide or discuss all the various and perplexing questions arising under the statute of 43rd Elizabeth. It is sufficient that we decide, as we shall decide and *367 have already intimated., that this case is of that class over which a Court of Equity may take cognizance, and in which such a court acting jiidicially, may act effectually, in upholding and promoting the bounty of the testator, according to his declared and unambiguous intention, and without violating any rule of law, principle of justice, or dictate of public policy.
If it be an available trust, there can be no doubt of the jurisdiction of a Court of Equity without regard to the statute; and if the statute apply,' we can scarcely doubt that a Court of Equity might take effectual cognizance, even in England. And in this latter opinion, we are sustained, as we think, not only by some of the foregoing authorities and considerations, but by the case of the Attorney General vs. Wansay, 15 Ves. 231, and Waldo vs. Caley, 16 Ib. 206, and by the opinion of Justice Slory, in the case of Philadelphia Baptist association, vs. Smith & Robertson, 3 Peters 499, where he says, when speaking on an analagous question, ktmy opinion is that it belongs “ to the Court, as a Court of Equity, exercising jurisdic- “ tion to enforce a trust recognized and enforced by the law « of the land; and I think this opinion is corroborated by “ the better authorities.”
And we too think that, not only reason and analogy, but a series of cases adjudged in England, will tend to the same conclusion.
In the Attorney General vs. Clark, Amb. 422, George Cranston having given by his will, £4,200 bank annuities to the poor inhabitants of St. Lenoards, Shoreditch—which would have been void at common law—the question was, whether the legacy was a charily within the statute, and therefore valid. Sir Thomas Clark, Master of the Rolls, decreed that it was; and this seems to have been a decree in Equity. And in White vs. White, (7 Ves. 423,) a testatrix having bequeathed £3,000 for putting out “poor relations” apprentices, and afterwards having, by a codicile, restricted the legacy to two families of her relations, Sir William Grant, Master of the Rolls, decreedthat it was a charity protected and made valid by the stat. ute. And this was evidently a suit in Equity by original bill.
Whenever the only objection to a bequest is, that it is for the benefit of persons described collectively by some characteristic trait, by which they may be identificd—if the bequest is a charity within the statute, & therefore valid, it is as good & available as it would liave been at com mon law, had it been to onecornpetent person in trust for another, identified by the will. And whoever may hold the legal title— if it does not pass by the will—will hold it in trust for the purposes of the will; nnd a court of equity, having jurisdiction of the trust, will effectuate the intentions of the testator.
Óthéí cases of á libé kind might be added; but we forbear.
Whenever the only objection to a devise of legacy is, that it is for the benefit of a class of private individuals described collectively by some characteristic trait by which they may be identified, if the donation bé a charity within the statute, aiid is therefore valid, it is, as a matter of course-, as good and available as it would have been, at common law, had it been to a competent person, in trust for another similar person, identified in the will by his proper name; and consequently, whoever may hold the legal title—if it did not pass by the will—will hold it in trust for the collective body to whose use it was dedicated by the testator. This seems to be an undeniable proposition; and if it be so, what objection can there be to the jurisdiction of a Court of Equity over it, as over any other valid and enforcible trust? Its being a charity according to the constructive operation of the statute, cannot be material except for the purpose of determining whether it is valid, as it will be if a statutory charity, or void, as it must be according the common law and the only law of the case, if it be not such a charity. If it be valid under the statute, then it will be just as available and just as judicially determinable, as it would have been had it been a good trust according to the principles of the common law. And if a Court of Equity might take cognizance of it in the one case, because it is a trust, is there, can there be, any reason for a want of jurisdiction in Equity in the other case, when the same trust exists with equal effect? We think not. The case is not prerogative, but judicial and equitable; and if a Court of Equity here has no jurisdiction, what court has? None. Then, as, according to the letter of the statute, and the tenor of the cases we have cited, the devise in this case must be deemed such a charity, within the statute, as a Court of Equity might protect, we conclude that, on this ground, were there no other, the bill of the appellants was properly dismissed.
But also, for reasons suggested in the first part of this opinion, we are, as already stated, satisfied that, even if *369 the devise is not protected, as a statutory charity, the bill was properly dismissed.
Wherefore, it is decreed and ordered that the decree of the Circuit Court be, and the same is hereby dffirmed.