CARTER & WIFE ET ALS. *vs.* BALFOUR'S ADM'R.

1. A bill is not multifarious which is filed by a single complainant as administrator *cum testamento annexo* of two estates which are so blended and so nearly the same that it is necessary to proceed under both wills at the same time, and which asks the direction of the court, for the complainant's protection, in the construction of the wills, the distribution and administration of the estates, the establishment of certain charitable bequests contained in one of the wills, the marshalling of the assets, and, contingently, contribution from the legatees for the payment of debts.

2. To such a bill all persons interested in the two estates, either as legatees or distributees, are proper parties defendants.

3. When a pecuniary legacy, bequeathed to children who die during

infancy leaving no issue, brothers or sisters, is received by their father after their death, his title is *prima facie* good, and requires no action of the court to settle it; and therefore the personal representative of the infants is not a necessary party to a bill filed by their father's administrator, asking the direction of the court in the construction of his will, the establishment of certain charitable bequests created by it, the marshalling of the assets, distribution of the estate, &c.

4. A clause of a will in these words, viz: "*After my debts are paid, the remainder of my property of whatever kind or nature,* I give and bequeath to my beloved wife," &c. does not conflict with, or destroy a preceding clause containing a bequest to certain benevolent societies. The word "*remainder*" in the subsequent clause must be construed to mean the residue of the testator's estate after deducting the previous bequests and paying debts.

5. In such case, the wife takes the whole estate charged with the payment of the charitable bequests at her death.

6. A bequest to "the Baptist Societies for Foreign and Domestic Missions, and the American and Foreign Bible Society," is valid and sufficiently specific; and if societies can be found, which were organized and known by those names at the time of the testator's death, they will be considered the societies referred to in the will, and capable of taking the bequest, whether incorporated or not.

7. But if such societies did not exist at the time of the testator's death, or cannot now be found, the bequests must be considered and disposed of as lapsed legacies. The doctrine of *cypres*, as applied to bequests to charitable uses, is not recognized in this State.

8. The court of chancery has jurisdiction over bequests to charitable uses by virtue of its original common law powers, without claiming prerogative powers, or invoking the aid of the statute of 43 Elizabeth.

9. Whether the statute of 43 Eliz. is in force in this State—QUERE?

10. *It seems*, that English statutes passed before the emigration of our ancestors to America, which were applicable to our situation, and not inconsistent with our institutions and government, constitute a part of the common law, and are in force (unless repealed,) in all the States of the Union.

11. When a testator bequeathes the whole of his estate, after the payment of his debts, to his wife, charged with the payment, at her death, of a pecuniary legacy to certain charitable societies, and the wife afterwards by her will disposes of the whole personal estate in specific legacies, and leaves the real estate undisposed of, the real estate must first be subjected to the payment of the debts and charitable bequests.

ERROR to the Chancery Court of Talladega. Tried before the Hon. D. G. Ligon.

This bill was filed by William McPherson, as administrator of the respective estates of John O. Balfour and his wife Regina Balfour, against all those who were interested in the two estates, either as legatees or distributees. It alleges that John O. Balfour died in Talladega county in January, 1843, after having executed his last will and testament; which was duly admitted to probate after his death. The clauses of the will which are involved in the questions presented by the case are in these words:

"ITEM.—I give to my sister, Emily J. Balfour, a life right in my negro boy Mike; also such articles as she and my wife may agree upon, to the value of one hundred dollars.

"ITEM.—I give one thousand dollars, to be paid at my wife's death, and to be divided in equal proportions betwixt the following Benevolent Societies, viz: the Baptist Societies for Foreign and Domestic Missions, and the American and Foreign Bible Societies; and at my sister Emily's death, if the boy Mike given to her during her life-time be alive, he shall be sold to the best advantage, and the proceeds of the sale equally divided between the societies above named.

"After my debts are paid, the remainder of my property of whatever kind or nature, I give and bequeath to my beloved wife, Regina Balfour, including the land whereon I now live," &c. (describing it.)

"I appoint my wife sole executrix of this my last will and testament," &c.

After the testator's death, said Regina took possession of all his estate, both real and personal, but never qualified as executrix or administratrix. In June, 1843, she also died, after having made her last will and testament, which was only attested by two witnesses. Letters of administration *cum testamento annexo* on the estates of said Regina and John O. were granted to complainant, and he files this bill asking the direction of the court in the construction of the will of John O. Balfour, the distribution of the two estates, the marshalling of assets between them, and, contingently, contribution from the legatees for the payment of debts. The bill further alleges, that in 1840, Rich-

ard Wilkes, of South Carolina, who was the father of said Regina, died, having bequeathed by his last will and testament the sum of $1500 each to Theodore Balfour and Alice Balfour, infant children of said John O. and Regina, which he directed should be invested in real estate, in which said Regina should have a life-estate; that he also bequeathed to said two children, two negroes, Moses and Hezekiah, the profits of whose labor said Regina was also to enjoy during her life; that the testamentary guardian appointed for the children never qualified; that both the children died in infancy leaving no issue, brothers or sisters; that said two negroes were delivered to John O. Balfour by the executors of said Wilkes, and were afterwards specifically bequeathed by said Regina in her will; that the pecuniary legacies were never invested in landed estate, but a portion thereof ($1350) was paid to John O. in his life-time; that the executors of Wilkes refuse to pay the balance to complainant, insisting that it is to be regarded as real estate, and therefore descends to the heirs at law, instead of the personal representatives. The bill charges that the real estate which was devised by said John O. to Regina, and which did not pass by her will on account of its defective attestation, is first subject to the payment of the debts of said John O. and Regina, and the aforesaid pecuniary legacies, and if it is insufficient, that the legacies must abate. The bill prays that "all parties interested in the respective estates and wills both as heirs and distributees," may be made defendants, and also the charitable societies named in said will, when found. The bill also prays, that if such societies as those named in the will cannot be found, then the legacy to them may be distributed among such other incorporated societies as are most nearly allied in their organization, objects and designs to those named in the will.

The defendants demurred to the bill, for multifariousness, for misjoinder of complainants, for want of proper parties defendants, and for want of equity, but their demurrer was overruled. In their answers they admit most of the material allegations of the bill, but they insist that the legacies to the charitable societies are void, and that the residuary personal estate is the proper fund for the payment of the debts of said John O. Balfour.

The chancellor ordered a reference to the master to ascertain the state of accounts between the two estates, the amount of, as

Carter & Wife et als. v. Balfour's Adm'r.

sets and debts of each, &c. By final decree he declared, that as to the bequests to the charitable societies, it was the duty of the court to establish them, and to appoint a trustee who might hold the fund for their benefit, if they could be found in a reasonable time; that the real estate, bequeathed by John O. Balfour to said Regina and undisposed of by her will, must first be subjected to the payment of debts and the charitable bequest, and that the specific legacies could not abate until it was exhausted; that the legacies bequeathed by Wilkes to Theodore and Alice, so far as the same had been received by John O. Balfour and used by him, must be regarded as personal estate; that the balance remaining in the hands of the executors was out of the jurisdiction of the court, and would pass, as real estate, to the heirs at law of Mrs. Balfour under the statute law of South Carolina. The legacy of $1000 to the charitable societies was ordered to be paid into court.

The errors assigned are,

1. The overruling of the demurrer;

2. The establishment of the charitable bequests;

3. Charging the real estate with the payment of the debts and charities;

4. Decreeing that the portion of the legacy bequeathed by Wilkes to Theodore and Alice Balfour which was received by their father, was personal estate;

5. Decreeing that the balance of said legacy was real estate, and not subject to the debts and charitable bequests;

6. Rendering a final decree without the presence of the personal representative of said Theodore and Alice Balfour.

WHITE & PARSONS, and WOODWARD, for plaintiffs in error:

1. The bill is multifarious. It asks the court to establish the bequest to the charitable societies, and administer it according to the doctrine of *cypres;* to direct the complainant in its administration; to compel contribution among the legatees; and to make the executors of Wilkes account with complainant.—9 Ala. 351. If complainant was entitled to recover the fund in the hands of Wilkes' executors, he could only sue in the Court of Ordinary or the Circuit Court of South Carolina; and there is no connection between that part of the bill and the establishment of the charity, or contribution among the legatees.—8 Ala. 694.

Carter & Wife et als. v. Balfour's Adm'r.

2. There is a misjoinder of complainants. Regina Balfour having never qualified as administratrix of John O., all the property belonged to his estate. Therefore the complainant, as administrator of Regina, either had no interest at all in it, or, if he had any interest, it was in conflict with the charitable bequest. A party having an interest as complainant may sometimes be joined as defendant, but the idea of joining a party as complainant, whose interest conflicts with every prayer in the bill, is an anomaly in pleading.

3. The personal representatives of Theodore and Alice Balfour should have been brought before the court, and the bill is defective without them. The bill involves litigation respecting property which was theirs, and there can be no decree unless they are represented. For this error the decree should be reversed.—16 Ala. 629.

4. The bill is defective in not showing property in John O. sufficient to satisfy the charitable bequests. The two negroes bequeathed by Wilkes to Theodore and Alice cannot be appropriated to this charity for want of their administrators; and the real estate particularly mentioned in the will is by it specifically devised to Regina, and therefore not liable to the charity.—10 Gill & Johns. 143; 2 Brock's R. 185; 3 Munf. 514; 6 ib. 87; 7 Paige, 421; 2 Jar. on Wills, 529.

5. The bill is also defective in not alleging that the property sold by the complainant was insufficient to pay the charities and the debts of John O. alone. It does allege that the proceeds were not enough to pay the debts of both John O. and Regina, but this is not sufficient; for the complainant had no right to apply the money to the payment of Regina's debts, and if he has done so he cannot ask the aid of this court; and if he has not thus applied the funds, he cannot ask this court to abate the legacies of one estate for the purpose of paying its debts and establishing a charitable bequest of another.

6. But it is contended, that the bill was rightfully retained to establish the charitable bequests, if for no other purpose. There is nothing in the bill to show that the charity was resisted by any of the legatees, and therefore there was no necessity to call in the aid of chancery. But the bequest itself is void.

1. Because it is repugnant to the last clause of the will, which gives "the remainder" of the estate, after the payment of the

testator's debts, to his wife, Regina.    The language of the res-
iduary clause, "the remainder of my property of whatever kind,
or nature," has the legal effect of conveying the absolute pro-
perty to the devisee—(4 Kent's Com. 535, (5th edit.;) 2 Jar. on
Wills, 190;) and such was the testator's manifest intention.    But
if this bequest of $1000 is supported, it is an incumbrance hang-
ing over the whole estate, and reducing the absolute property in
the devisee to a mere life estate.   It is a charge upon the estate,
and not upon the person.    It is settled too, that when a devisee
is directed to pay debts, he takes the fee; otherwise the mere
life estate might not remunerate him for the debts which he
pays.—10 Wheat. 231 ; 24 Pick. 129 ; 2 McCord's Ch. 177.
The residuary clause then conflicts with any legacy which would
convert the devisee's interest into a life estate.—16 Ala. 184 ; 1
Jar. 411.

2.  Because our courts of chancery have no jurisdiction to es-
tablish charitable bequests, when there is no person *in esse* to
take, no trustee appointed, and the charity is of an indefinite
nature.    The American cases which affirm the doctrine of the
equitable jurisdiction of courts of chancery over charitable be-
quests, are 17 Serg. & R. 88 ; 4 Dana, 357 ; 9 Cow. 437; 7
Verm. 241 ; 24 Pick. 152 ; but none of these cases go to the
extent necessary to maintain the bequest in this case.   Here
there is no trustee, no person, natural or artificial, capable of
taking, and the charity is of an indefinite nature.    The proof
fails to show that there are any such associations as those named
in the will, and the bill invokes the doctrine of *cypres*.

Of the American authorities above referred to, two of the
States, Massachusetts and Kentucky, place the doctrine upon
the statute, 43 Elizabeth, which they recognize.    But even in
Kentucky the doctrine of *cypres* is repudiated.    North Carolina
too has decided in favor of the jurisdiction, but it is upon the
authority of 43 Eliz., and the doctrine of *cypres* is not carried
out.—1 Hawks' 96; 1 Dev. Ch. 276; 2 Ired. Eq. 255.    On the
other hand, Maryland, Virginia and Connecticut have decided
against the original jurisdiction of chancery over charities.—5
Har. & Johns. 392; 3 Leigh, 450; 4 ib. 327; 3 Peters' 484; 6
Conn. 293.    The case of Vidal v. Mayor of Philadelphia, (2
Howard, 128,) is no authority to support this bequest, for in
that case there was a corporation capable of taking; and that

distinguishes the case from 3 Peters' 484, where a bequest pre-
cisely analogous to this was held void. The preponderance of
American authority is clearly opposed to the doctrine of equita-
ble jurisdiction of such cases.

7. But if chancery has jurisdiction, the Attorney General was
a necessary party.—1 Dan. Ch. Pr. 172; 1 Eng. Ch. R. 21; 4
Viner's Ab. 500. If it is said that the Attorney General is only
a necessary party in England as the representative of the King,
and therefore an unnecessary party here; then the court loses its
jurisdiction; for the King is the source of the jurisdiction of
chancery over charities.—Jeremy's Eq. Pl. 234; 2 Vern. 342.

8. But if the charity was good, and the jurisdiction of the
court over charities admitted, still the court cannot, and will
not undertake to supervise a charity to be administered by a
trustee which, if any where, is in the State of New York, as the
bill itself shows.—2 Roper on Leg. 147.

COLEMAN, J.—John O. Balfour, late of Talladega Coun-
ty, departed this life in January, 1843, leaving his will, so much
whereof as it is material to consider is in these words, viz. :

"Item : I give to my sister Emily J. Balfour, a life right in
my negro boy Mike, also, such articles as she and my wife may
agree upon to the value of $100.

Item : I give $1000 to be paid at my wife's death, and to be
divided in equal proportions, betwixt the following benevolent
societies, viz. : The Baptist Societies for Foreign and Domestic
Missions, and the American and Foreign Bible Society ; and at
my sister Emily's death, if the boy Mike, given to her during
her life time, be alive, he shall be sold to the best advantage, and
the proceeds of sale equally divided between the societies above
named.

After my debts are paid, the remainder of my property, of
whatever kind or nature, I give and bequeath to my beloved wife,
Regina Balfour, including the lands whereon I now live, &c.

I appoint my wife sole executrix of this my last will and testa-
ment," &c.

Regina Balfour, after taking possession of all the estate of
John O. Balfour, but previous to any probate of his will, died in
June, 1843, leaving her last will, by which she disposed of all
her estate. Her will being attested by only two witnesses, was

good only as to the personalty therein bequeathed, and void as to the real estate. After the death of Regina Balfour, both of the wills were admitted to probate in the County Court of Talladega County, and letters of administration, with the wills annexed, on both estates, were granted to William McPherson. By him this bill was subsequently filed, asking the aid and directions of the court in the execution of the trusts created by the wills.

The bill is demurred to, first, for alleged multifariousness and misjoinder of defendants.

The object of the bill is to ask the court to place a construction on the wills, to decide on the validity of the bequests, to direct the marshalling of the assets of the estate, and contingently, to require contribution from the legatees, if necessary, to pay the debts of the estate. With this view, I think the bill of the complainant properly made a full disclosure of all the facts connected with the case, and made all the persons interested in the estate, parties defendants.

Secondly, for misjoinder of complainants, alleging that the complainant appears as the representative of two estates, between which estates there is a conflict of interests, &c. There is but one complainant, and he sues here to protect his personal interest, by asking the court to guide him in the administration of the estates, the interests of which are so blended and so nearly the same, that it was necessary to proceed under both wills at once.

Again: it is insisted that the representatives of Theodore and Alice Balfour should have been made parties defendants. This would have been necessary, if the chancellor had assumed jurisdiction over that part of the legacy still due them by the will of Richard Wilkes, and which remains in the hands of his executors, John W. Wilkes and Joseph Carter, in South Carolina. To that part of the legacy which was paid and delivered to John O. Balfour in his life time, viz., the sum of $1350 and the two slaves, Hezekiah and Moses, I think John O. Balfour's title at least *prima facie* good, and not requiring any action of the court to settle it, and it was therefore unnecessary to make the representatives of the infants parties. John O. Balfour being the sole heir of his infant children previously deceased, and being in the possession and enjoyment of the property at the time of his death, there was no ground to question his title.

1. It is contended that the charitable bequests to the benevolent societies are void, because they are repugnant to the last clause of the will, and that they come under the rule of construction of wills, that if two parts or clauses of a will are so utterly inconsistent with each other that both cannot stand, the latter must prevail. The correctness of this rule is not questioned, but it is not considered as applicable in this case. The word "remainder," in the last clause, must, I think, be considered to mean the remainder of his estate left after taking out the previous bequests to Emily Balfour and the societies, as well as the amount necessary to pay the debts. The bequest to Regina Balfour is in effect a gift of all the estate, except said legacies and the amount necessary to pay the debts. The language of the will, I think, readily admits of this construction, without being compelled to resort to the known rule, that if possible, we must give to the whole instrument a construction that will render every part of it effectual, *ut res magis valeat quam pereat*.

The great rule in the construction of wills is, that the intention of the testator must govern, that the intention of the testator must be sought after and carried out, if not inconsistent with the law of the land. Can it be doubted, here, that the testator intended to make the bequests to the benevolent societies? If not, why did he make the second clause in his will? Or if, after making the bequests, it may be supposed he wished to revoke them, could he not find language to effect his purpose, without leaving the matter to remote inference or equivocal argument?

It is admitted that the last clause of the will making the bequest to the wife, is not inconsistent with the previous bequest to Emily Balfour. Then why should it be considered inconsistent with the charitable bequests? It would seem that if the last clause is repugnant to and necessarily repealed the charitable bequests, it necessarily repealed the bequest to Emily Balfour; for the two bequests occupy the same position in the will, and the reason for considering one revoked is equally applicable to the other.

The following rules tend strongly to sustain the charitable bequests in this case: That the general terms in the latter part of a will should not render void the specific devise before made, and that general words may be restrained to make the whole will consistent.—6 Ves., jr., 129; 7 ib. 403; 10 ib. 595-7;

Bac. 341; and again, general and doubtful words in a will shall not alter an express devise before made, nor carry any thing contrary to the apparent intent, (7 Bac. 342,) nor express dispositions be varied by inference or argument from other parts of the will.—Wms. on Ex. 716; 1 Ves., jr., 269; 8 ib. 42.

It is also insisted, that to sustain the charitable bequests, would, in effect, restrict the whole of the estate bequeathed to Regina Balfour to a life estate, because the incumbrance of the charity would apply alike to every part of her bequest, and that this would defeat the intention of the testator, which was to give her the property in fee simple.

To this it may be successfully replied, that there is no rule of law to prevent the testator from charging the whole of the residuary estate with the payment of the legacy, or from making it payable at his wife's death; that it was clearly his intention to do so, and that Regina Balfour took the estate with the charge upon it, and as a necessary consequence, when the charity was payable, at her death, her representatives were bound to pay it. I know of no law preventing a person from binding his representative, either expressly or impliedly, to pay a debt at his death.

2. It is insisted that the bequests must fail because the benevolent societies are merely voluntary associations, unincorporated and incapable by law of taking the bequests, and that there is no trustee to take for them; and further, that the object of the charities is too vague and undefined to be sustained by a court of equity.

The bequests are, "to the Baptist societies for Foreign and Domestic Missions," and "to the American and Foreign Bible Societies." I think these descriptions sufficiently specific, and if societies can be found which were organized and known by those names at the time of the testator's death, they should be considered the societies referred to by the will, and capable of taking the bequests, whether incorporated or not. In making the gifts to the societies by their names, I think it clearly and necessarily inferrable that the gifts were intended to be made to them in their aggregate capacity, and for the purposes for which they were organized, and that the testator could not have intended the gifts for the individual members of the societies, or he would have made the bequests to them by their individual names in the ordinary way. It must be presumed that the testator

Carter & Wife et als. v. Balfour's Adm'r.

knew for what object the societies were formed, and that he intended to have the funds applied to that object.—4 Wheat. R. 28. It is like "a devise to a college or any institution known by name; it is presumed to be for the purposes intended by the founder." In such cases, there can be no reasonable doubt as to the intention of the testator; it therefore need not be more specifically made known. It appearing satisfactorily, then, that the testator intended to create a trust in this case, the question arises, whether the court, by virtue of its common law powers, and without the aid of the statute of 43d Elizabeth, has the power to enforce the trust. The general jurisdiction of chancery over trusts has never been questioned, and the interposition and direction of courts of equity as to trusts created by will, are very frequently afforded for the safety of parties in interest, and to protect them against further litigation.—2 Story's Eq. 325.

I think it clear, that according to the English authorities, these bequests would be sustained independently of the statute of Elizabeth. Such is the opinion of Judge Story, as expressed in the case of Vidal et al. v. Girard's Ex'rs., (2 How. 128.) After an elaborate examination of the English authorities, and showing that the dicta and opinions in a large majority of the cases go to sustain such bequests, he says: "There is the very recent case of the Incorporated Society v. Richards, (1 Drury & Warren R. 258,) where Lord Chancellor Sugden, in a very masterly opinion, upon a full survey of all the authorities, and where the point was directly before him, held the same doctrine as Lord Redesdale, and expressly decided that there is an inherent jurisdiction in equity in cases of charity, and that charity is one of the objects for which a court of equity has at all times interfered, to make good that which, at law, was an illegal or informal gift; and that cases of charity in courts of equity in England were valid, independently of, and previous to, the statute of Elizabeth. Justice Baldwin, in the case of the will of Sarah Zane, after very extensive and learned researches into the English authorities and statutes, arrived at the same conclusion." Judge Story further adds, in the foregoing case of Vidal et al., &c., "that very strong additional light has been thrown upon this subject by the recent publications of the Commissioners on the Public Records in England, &c. Among these are found many cases in which the Court of Chancery en-

53

tertained jurisdiction over charities long before the statute of 43d Elizabeth, and some fifty of those cases have been laid before us. They establish in the most satisfactory manner, that cases of charity, where there were trustees appointed for general and indefinite charities,. as well as for specific, were familiarly known to, and acted upon and enforced in the Court of Chancery. In some of these cases the charities were not only of an uncertain nature, but as far as we can gather from the imperfect statement in the printed records,. they were also cases where there were either no trustees, or the trustees were incompetent to take. The Records,. therefore, do, in a remarkable manner, confirm the opinions of Sir Joseph Jekyll, Lord Northington, C. J. Willmot,. Lord Redesdale and Chancellor Sugden. Whatever doubts, therefore,. might properly be entertained upon the subject, when the case of the Philadelphia Baptist Association v. Hart's Ex'rs. (4 Wheat. 1,) was before this court, those doubts are entirely removed by the late and more satisfactory sources of information to which we have alluded."

There seems to be greater contrariety among the American than the English decisions on this subject, but I think the weight of American authority is decidedly in favor of such bequests.

In Massachusetts,. in the case of Burbank v. Whitney, (24 Pick. 146,) the bequest was to the American Bible Society, and to the American Home Missionary Societies, unincorporated societies. The court say,. there is no doubt that donations to charitable purposes were held valid previous to the statute Elizabeth, and that they were good, although the charity was to be distributed by an unincorporated society, and although no person was *in esse* who could be the *cestui que use*,. and whether such society transacts its business here or in another State.

In Kentucky, in Moore's Heirs v. Moore's Devisees and Ex., (4 Dana, 354,) it was held that the devise, viz: "that the testator's estate in a certain contingency that did happen, should be converted into a fund for the education of some poor orphans (of this county) to be selected by the County Court, is a valid devise at common law, and may be enforced independently of any English statute."

In North Carolina, (1 Hawks' L. & E. R. 97, Griffin v. Graham,) the object of the bequest was the establishment of a school for the education and maintenance of poor orphan chil-

dren, and it was sustained. In these three States the statute of Elizabeth was held to be substantially in force, but that the bequests were good independent of the statute.

In New York, in Potter v. Chapin, (6 Paige 649,) the chancellor says, "although some doubt was thrown upon the question of charitable donations, for the benefit of a community or body not incorporated, so as to be capable of taking and conveying the legal title to property, by the decision of the Supreme Court of the United States in the case of the Baptist Association v. Hart's Ex'r., (4 Wheat. 1,) I believe that it is generally admitted that the decision in that case was wrong. And it may be considered as an established principle of American law, that the court of chancery will sustain and protect such a gift, bequest, or dedication of property to public or charitable uses, where the object of the gift is specific, and capable of being carried into effect, according to the intention of the donor."

In King v. Woodhall, (3 Edwards 79,) the bequest was to the Home Missionary Society, an unincorporated voluntary association, where neither the object of the bequest was specified, nor any purpose to which the money was to be applied, yet the bequest was sustained. The vice chancellor says, " the testator must be presumed to know the purposes for which the society was formed, and to what objects and uses its funds were to be applied." In Wright et al. v. Trustees of Methodist Episcopal Church, (1 Hoffman 205,) the bequest was " to the Yearly Meeting of Friends in New York, a voluntary unincorporated association." The bill was filed to obtain the directions of the court as to the distribution of the estate. It was held that the power to enforce such a charity was in the court, by virtue of its original constitution, independent of the statute, and the bequest held to be valid. The decision of McCartee v. Orphan Asylum, (9 Cowen 437,) is to the same effect.

In Pennsylvania, in Witman v. Lex, (17 Serg. & Rawles 93,) a bequest to St. Michael's & Zion's Churches, to be laid out in bread annually for ten years for the poor of the Lutheran Congregation, and also a bequest for the education of young students in the ministry of the German Lutheran Congregation, were sustained; and the Chief Justice adds, "it is immaterial whether the person to take be *in esse* or not, or whether the legatee were, at the time of the bequest, a corporation capable

of taking or not, or how uncertain the objects may be, provided there be a discretionary power vested any where over the application of the testator's bounty to those objects."

In 7 Vermont Reports, 241, (Executors of Burr v. Smith et al.,) the bequest was to the treasurer, for the time being, of the American Bible Society, an unincorporated society. The bequest was sustained, and it was decided that courts of chancery held jurisdiction over charitable bequests before the statute of Elizabeth, by virtue of their equity jurisdiction, and that a gift to a charitable use might be decreed, notwithstanding the objects were vague and indefinite, and the persons who were to carry into effect the intent of the testator, were a society unincorporated.

In the three last mentioned States the statute of Elizabeth was not in force.

The leading case in opposition to the foregoing decisions, is the the case already referred to in 4 Wheat. 1. The bequest was "to the Baptist Association that for ordinary meets at Philadelphia annually, to be a perpetual fund for the education of youths of the Baptist denomination, who shall appear promising, for the ministry, always giving preference to the descendants of the testator's father's family." It was held that the association, being an unincorporated society, could not take the trust, and that the bequest was void for uncertainty as to the devisees, and could not be established by a court of equity without the aid of the statute of Elizabeth, which was not in force in Virginia, where the case arose. This case was followed by the decisions (and the decisions placed upon the same ground) in Gallego's Ex'rs. v. The Attorney General, (3 Leigh 450,) decided in Virginia, and in Dashiell v. Attorney General, (5 Har. & John. 392,) decided in Maryland. In Tennessee, in Greene et al. v. Allen et al., (5 Humph. 170,) a similar doctrine is held, and that a devise analogous to the one under consideration could not be sustained under the statute of Elizabeth. In this construction of the statute this decision differs from all the authorities I have examined.

I consider the above case from 4 Wheat. as partially, if not altogether overruled by the same court. In Beaty v. Kurtz, (2 Peters 566,) a lot of ground had been marked out by the proprietor, upon the original plan of the town, for the use of the Lu-

theran Church, a voluntary unincorporated society.   This was sustained in favor of the society upon a bill filed by a committee in behalf of the society.   In Ingles v. The Trustees of the Sailor's Snug Harbor, (3 Peters 99,) the testator gave real estate to the chancellor, &c., and other persons by their official description and their successors in office, to establish an asylum called the " Sailor's Snug Harbor," for the purpose of maintaining aged and decrepid sailors.   The devisees, as requested by the testator, were incorporated after his death.   The court sustained the devise in opposition, as I think, to the case from 4 Wheat. 1. The object of the bequest, the maintaining aged and decrepid seamen, is quite as vague as the object in that case, nor were the devisees more competent to take than the members of the Baptist Association.

In the case in 2 Howard 128, (Vidal et al. v. Girard's Ex'rs.) one of the objections to the will was, that the beneficiaries were too uncertain and indefinite.   They are declared in the will to be " poor white male orphans, between the ages of six and ten years," first, of the city of Philadelphia ; secondly, those born in any part of Pennsylvania ; thirdly, of the city of New York, and lastly, those of New Orleans.   See the opinion of Judge Story, above referred to, in which the case in 4 Wheat. 1 is reviewed, and this is held to be a valid charity, independent of the statute of Elizabeth.

With the view I take of this case, it is not necessary to inquire whether the statute of 43d Elizabeth is in force in this State.   It appears that that statute was passed in the year 1601, and the first settlement of Virginia, (that being the first settlement in any part of the United States,) was in 1607.   And the doctrine appears to be settled that English statutes passed before the emigration of our ancestors to America, and which were applicable to our situation and not inconsistent with our institutions and government, constitute a part of the common law, and are in force (unless repealed) in all the States of the Union.—5 Pet. 233; 8 Pick. 309; 4 Paige 198; 1 Kent. 472-3; 4 Dana, 361.

In the case above referred to in 4 Wheat. 29, Chief Justice Marshall admits that the legacy in that case would be sustained in England under the statute of Elizabeth, and the decisions, so far as I have examined them, are uniformly to that effect, except the case above referred to in Tennessee.

Carter & Wife et als. v. Balfour's Adm'r.

My opinion is, that the bequests in the will are valid, and that a court of equity can give them effect by virtue of its common law and judicial powers, without claim to any *prerogative* power, and without invoking the aid of the statute of 43d Elizabeth. I do not recognize the doctrine of " cypres," which, in substance is, if you cannot find the society specified in the will, or apply the fund to the charity intended by the testator, the court will then apply it to some other charity as nearly analogous to it as possible. The bequests should be paid only to the societies specified in the will, or their authorized agents. If the societies or either of them did not exist at the time of the testator's death, or cannot now be found, organized and known as above stated, then the bequest to such society or societies should be considered and disposed of as lapsed legacies. The meaning of the chancellor is somewhat obscure on this last point, but we think if the decree is reasonably construed, it will be found to conform substantially with the foregoing view of the case.

We see no error (as is insisted by part of the plaintiffs in error,) in the mode of marshalling the assets of the estate adopted by the decree. John O. Balfour, by his will, after giving the legacies to his sister Emily, &c., in legal effect gave the whole of his estate to his wife, subject to the charge of the charities. She bequeathed specifically to the legatees named in her will all the personal estate, leaving the real estate undisposed of, and which was consequently properly decreed first to be appropriated to the payment of the charities. The whole of the estate, real and personal, was charged with the payment of the charities, but Regina Balfour had clearly the right to determine what part of the estate should be first applied towards the payment thereof.

The decree is affirmed.

CHILTON, J., having been of counsel, did not sit in this case.