Lepage et al. v. McNamara.

## LEPAGE, *et al. v.* McNAMARA.

5 124
88 495
5 124
93 104
5 124
104 225
5 124
108 656
5 124
⊙121 86
5 124
127 740

An administrator has no title or interest in the real estate of the decedent, subject to sale; and a sale of such real estate on execution, under a judgment rendered against such administrator, passes no title to the purchaser.

A party claiming title to real estate of a decedent, sold on execution, under a judgment rendered against the administrator of such decedent, while the act subjecting real and personal estate to execution, approved January 25, 1839, was in force, must show that the heirs were made parties to the judgment, before the issuing of the execution.

Where in an action of right, the defendant, in order to prove title to the premises in himself, offered in evidence the record of a judgment in the district court, against D. and F. as administrators of L., dated November 15, 1842, under which an execution against said administrators, issued, and by virtue of which the real estate of L. was sold, and also a sheriff's deed for said real estate, dated June 23, 1843, to which evidence the plaintiff objected, but the objection was overruled, and the evidence allowed to go to the jury; *Held,* That the evidence was improperly admitted.

Where an execution, issued on a judgment against D. and F. as administrators of L., commanded the sheriff to cause to be made of the goods and chattels, and for want thereof, *of the lands and tenements* of said D. and F., administrators of said L., deceased, the amount of the judgment and costs recovered against them; *Held,* That the court could not infer from the language of the execution, that the heirs of L. were made parties to the judgment; nor that execution had been awarded against the real estate of the decedent, descended or devised to his heirs.

Where a party to whom a devise is made, takes no beneficial interest, and the *cestui que trust* is not sufficiently indicated, the devise is void.

In a devise, there is the same necessity for a *cestui que trust,* capable of taking the beneficial interest, and so defined and pointed out, as that there shall be no uncertainty, as there is for a properly defined grantee in a deed.

If there is such uncertainty, as that it cannot be known who is to take as beneficiary, the trust is void; and the heir, by operation of law, will take the legal estate, stripped of the trust.

Where L. in his last will and testament, devised as follows: "All the real "estate of which I shall die seized and possessed, shall fall into the "possession of my wife, G., for her own use and benefit during her "life-time; at which time I direct and authorize the Right Reverend "Bishop Loras, or his successors, to dispose of my real estate, and "apply so much thereof to the church, or to the education and main- "tenance of poor children, as he in his wisdom, may think proper and "legal;" and where Bishop Loras, after the death of the wife of the testator, conveyed a portion of his real estate by deed; *Held,* 1. That the devise was void for uncertainty; 2. that no legal estate, or benefi-

Lepage et al. v. McNamara.

cial interest, passed to Bishop Loras under the will; and the convey-
ance of the real estate by him, passed no title to his grantee; and 3.
That the real estate of L. after the death of his wife, descended to his
heirs, unaffected by the provisions of the will.

Wills are to be construed so as to carry out the intention of the testator,
so far as may be consistent with the rules of law; and if the entire
will and all its provisions, cannot be sustained, still it is to be so con-
strued, as to sustain and carry it out as far as may be practicable.

Where the intention is ascertained, if it cannot be carried into effect, by
the principles of the law, courts cannot do that which the testator might
have done, and re-model the provisions of the will.

Our courts of chancery have no other than judicial power, and consequent-
ly have no jurisdiction to give effect to gifts and devises, in those cases
where no particular object is designated, and no trustee named, or per-
son appointed to select the object, and which is administered by the
chancellor of England, under the prerogative power, and by virtue of
an appointment of the crown, as *parens patriæ.*

If a testator ineffectually dedicates his property to charity, or in such
manner that the devise is void, the State possesses no prerogative right
to interfere, and dispose of the property, as the King of England has
been permitted to do.

### *Appeal from the Dubuque District Court.*

#### WEDNESDAY, SEPTEMBER 9.

This was an action under the Code, for the recovery of
real property. The plaintiffs claim as the heirs at law
of Baptiste Lepage, deceased, the legal title and immedi-
ate possession of the north sixteen feet and nine inches of
lot 77 A., in the city of Dubuque. They aver that the de-
fendant is in possession of the premises, receiving the
rents and profits, and they pray judgment against him for
the possession, and damages for the detention of the same.
The defendant answers, and denies the right of the plain-
tiff. He avers that he is rightfully in possession, under
the following claim of right:

1. By virtue of a deed of conveyance from Francois X.
Biron, duly executed and recorded, who he avers was, at
the time of the conveyance, the owner of the premises in
fee simple, and had good right to sell and convey the
same.

2. That the said Baptiste Lepage, by his last will and

testament, duly proved, and admitted to record by the Probate Court of Dubuque county, devised the premises to his wife, Genevieve, for her life, with further direction and authority, "after the death of his said wife," to the "Right Reverend Bishop Loras, or his successors, to dispose of the said real estate, and apply so much thereof to the church, or to the education and maintenance of poor children, as he in his wisdom should think proper and legal." And that, the said Genevieve having departed this life, the said Bishop Loras, on the 14th of May, 1855, conveyed to defendant all the title and interest in said premises, vested in him, the said Bishop, by virtue of the will of said Baptiste Lepage.

To this answer the plaintiff replied, denying that the said Biron, at the time of the conveyance by him to defendant, was the owner of said premises as alleged, or that he had any right to sell and convey the same; and denying that any right or interest in the same vested in said Bishop Loras, by virtue of the will of Baptiste Lepage. On the trial, the plaintiffs introduced evidence to show that they were the legal heirs of Baptiste Lepage, deceased; and that their said ancestor died in 1841, siezed of said premises, and rested. The defendants gave in evidence, the records of the Probate Court of the county, from which it appeared that the will of said Baptiste Lepage had been duly proved and admitted to record, and administration, with the will annexed, granted to E. C. Dougherty and James Fanning. He also gave in evidence the record of a judgment in the District Court of said county, in favor of Henry Simplot, against said Dougherty and Fanning, as administrators, for $131.23, of the date of November 15th, 1842; also the execution issued on said judgment, with the sheriff's return thereon, of sale made by him by virtue thereof, and the sheriff's deed, from which it appeared that the sheriff had levied said execution on the premises in dispute, and having advertised the same, sold and conveyed them to said Henry Simplot, June 23d, 1843. Deeds of conveyance were

also offered from Simplot to Biron, and from Biron to defendant; also the deed from Matthias Loras, Bishop of Dubuque, to defendant, for all the right and interest of the said Bishop in the premises. Objections made by the plaintiffs to the admission of this testimony were overruled by the court, and the evidence suffered to go to the jury. The court then charged the jury, that the sheriff's deed to Simplot, was good and valid as to plaintiffs, and conveyed a good title to the defendants; that the will of Lepage, conferred a valid power upon Bishop Loras, to convey away the real estate of the testator, either at public or private sale, as he should choose; that fhe Bishop was a legatee in his own right; that the testator made, in effect, an absolute bequest to the Bishop, of the proceeds of the real estate; and that the deed from the Bishop to the defendant, was good and valid against the plaintiffs. The plaintiffs asked the court to instruct the jury as follows:

1. That the deed from the sheriff to Simplot, was void as to the plaintiffs.

2. That by the terms of the will of Lepage, the real estate of said deceased, was devised to no one.

3. That the power to dispose of the real estate of said Lepage, attempted to be given to said Bishop Loras, by said will, was void for uncertainty.

These instructions the court refused to give. To the admission of the evidence of the defendant—the instructions given to the jury by the court—and the refusal to give the instructions asked by the plaintiffs, the plaintiffs excepted. The jury returned a verdict for the defendant, upon which judgment was rendered, from which the plaintiffs appeal, assigning for error, the admission of the defendant's evidence, and the giving, and refusing to give, the instructions.

*Hand & Covel,* for the appellants.

I. We hold the sheriff's deed to Simplot not to be good: 1. Because based upon an execution issued in di-

rect violation of law, and consequently void. Statute of 1843, 637, section 25; statute of 1839, 202, section 16. 2. The administrators against whom the execution issued, had no interest in the real estate sold. Statute 1839, 490; statute 1843, 676, section 5, part 2. 3. By the deed of the sheriff, it appears that only the interest of the administrators was conveyed to Simplot, whilst the administrators had no interest in anything except the personalty. 4. The general doctrine is this: "A thing is void which "was done against law, at the very time of the doing it: "and no person is bound by such an act." Bac. Abr. Title Void, 374. The whole proceedings of the sheriff were of this character. See *Arnould* v. *Fuller's Heirs*, 1 Ohio, 458; *Lessee of Gray* v. *Asken*, 3 Ohio, 466; *Woodcock* v. *Bennett*, 1 Cowen, 738; *Mason's Dev.* v. *Peters Adm'r*, 1 Mumf. 445.

II. Laying aside the proceedings of the sheriff, as having no effect in transferring the title, we will now examine whether the course of descent marked out by law, has been changed by the provisions of the will. We hold the deed of Matthias Loras to the defendant, to be utterly of no effect. Matthias Loras had only such rights in relation to the real estate in controversy, as he derived from and under the will, and by the will, he had no rights which a court can recognize.

*First.* At the time this will began to operate, no law was in force except the common law, and the statute of 1839. See 2 Monetti's "Valley of the Mississippi," 561, which is to the effect, that the whites began to occupy the first Blackhawk purchase at Dubuque and Burlington, in 1832. 7 U. S. Statutes at large, 272, 328, 374, showing that the treaty with Blackhawk was signed 21st September, 1832, and the proclamation allowing whites to settle the territories, was dated 13th February, 1833. Various other statutes of the United States, prohibited the whites from settling this territory, and this prohibition was only removed by the above proclamation in 1833. Iowa was attached to the Territory of Michigan, June 28, 1834.

See 4 Statutes U. S. at large, 701.  This law provides as follows:  "And the inhabitants therein, shall be entitled "to the same privileges and immunities, and be subject to "the same laws, rules and regulations in all respects, as "the other citizens of Michigan Territory."  Among the other laws in force in Michigan, was one passed in 1810, and in 1833, incorporated in the Revised Statutes of Michigan, as still in force.  This law abolished all the acts of the parliament of England, and the acts of the parliament of Great Britain, as well as nearly, if not everything, which might be in force, except the statute law then enacted.  See Rev. Laws of Mich. 1833, 563 ; statute 1839, 513, section 135 ; Laws of extra session 1840, 20.

*Second.*  By the common law, no devise of real estate was permitted.  Co. Litt. 111 and 236.

*Third.*  It was permitted by the statute of 1839, but required to be made to "persons," defined by same statute to mean either individuals or bodies corporate.  Statute 1839, 471, section 1 ; Ib., 483, section 38 ; Ib., 74, part 12.

*Fourth.*  But there was no devise.  The words used :— "I direct and authorize the Right Rev. Bishop Loras, or his successors," &c., do not import a devise, but merely a naked power to dispose of ; and the real estate, until this naked power is exercised, descends to the heirs, who are entitled to the rents and profits in the meantime.  If the power is a good one—one that the Court will enforce— then the heirs become divested, upon the proper execution of the power.  4 Kent, 320 and 525 ; Hill on Trustees, 334 and note ; Ib., 685 and note ; *Bergen* v. *Bennett*, 1 Caines Cas. 16 ; *Lancaster* v. *Thornton*, 2 Burr. 1029 ; *Jackson* v. *Burr*, 9 John. 104 ; *Schanber* v. *Jackson*, 7 Cowen, 193 ; *Reed* v. *Underhill*, 12 Barb. 113 ; *Fay* v. *Fay*, 1 Cush. Mass. 104 ; *Jamieson et. al.* v. *Smith's Executors*, 4 Bibb, 397 ; *Taylor* v. *Morris*, 1 Comstock, 342 ; *Doe* v. *Lanins*, 3 Ind. (Carter) 442 ; *King ads. Ferguson*, 2 Nott and McCord, 590.

*Fifth.*  The words " or his successors," indicate that it

was the office of Bishop, and not the man—not the present incumbent of that office—who was intended to carry into effect the provisions of the will. *Green* v. *Dennis*, 6 Conn. 292.

*Sixth.* Admitting that Bishop Loras was capable of acting as trustee, the time for action is past—the testator evidently intending the trustee to act at the death of the widow. "At which time," says the will.

*Seventh.* The intentions of the testator are too uncertain to be carried into effect. The subject matter of the trust is uncertain—"So much thereof as he may judge proper and legal." How much? Certainly not the whole. The objects of the testator's bounty are clearly uncertain, "to the church, or to poor children." What church? What poor children? Here we see clearly a trust is intended to be created, but how can a court of equity carry the trust into execution? The *cestuis que trust* are uncertain—too much so to be ascertained; two classes named in the alternative, neither of which can be determined—not even guessed at—and the trustee an unincorporated suc cession of persons, unknown to the law. It is also uncertain whether the testator intended the trustee to sell the property and apply the proceeds, or to apply the property in specie.

*Eighth.* There are also grave objections to the deed from Mathias Loras to defendant. The law of 1843, (under which this trust became operative, Mrs. Lepage having died in 1843), required trustees to file a bond, and the Bishop has filed no bond.   Statutes 1843, 695, sections 1, 4 and 8. By the Code, it would seem that a trust cannot be created by will. Code, section 1205. The conveyance should have been made under the direction of a court of probate. The deed only conveys the interest of Bishop Loras, and he had no interest to convey. The sale is a manifest breach of trust, to which the defendant is a party, and ought not to be supported. The recitals of the deed show, that he was consulting the interests of the defendant, and not of his *cestui que trust*.

*Ninth.* Is this a case of charity? We have endeavored to show that no other law can be taken into consideration, except the common law, and the statute of Iowa, 1839. This will exclude the statute of 43d Elizabeth. We make two points: 1. The statute 43d Elizabeth is entirely abolished, and no aid can be derived from its provisions. 2. The power is intrusted to an unincorporated association, unable to exercise it, and the beneficiaries are also uncertain and indefinite. *Vidal* v. *Girard's Ex.* 2 How. 192. These two points entirely distinguish the case now before the Court, from the case of *Vidal* v. *Girard's Ex.* The second point also distinguishes our case from the case of *Miller* v. *Chittenden*, 2 Iowa, 315, and the case of *Johnson* v. *M. E. Church*, 4 Ib. 180. In both these cases, the beneficiaries are entirely definite and certain, and the trustee able to take. And the further distinction is observable, the beneficiary, although unincorporated at the time the will began to operate, became incorporated before the case came into this Court. In the case now before the Court, the corporation sale, (Bishop Loras and his successor in the Episcopal office), was not, and never yet has been, incorporated; and there is no pretence that the beneficiaries ever have been, or ever can be, incorporated. We rely upon the following passage in the opinion of this Court, in the case of *Miller* v. *Chittenden*, 377: "We are asked if this grant is sustained," &c., and ask that it be applied to our case. In other words, we take it that the substance of the decision of this Court, is this: That if nothing intervenes to prevent the carrying into effect a charitable bequest, except the want of incorporation, this Court will effectuate the intention; but the want must have been supplied, and the unincorporated association must be incorporated, by the time the decree is made, or the Court will not carry the bequest into effect. In this case, in addition to the want of incorporation existing both in the trustee and *cestui que* [*trust*, there is such an entire uncertainty as to who are the proper parties ben-

eficially entitled to the trust object, we think it entirely impossible to uphold the trust.

*James Grant,* on the same side.

This devise is void for uncertainty in the designation of the charity.  1. It is uncertain whether the charity is for the church *or* the poor.  2. It is uncertain what church, or what poor.

Sir Thomas Cheny devised certain lands to his son Harvey, and to the heirs of his body, the remainder to Thomas Cheny of Woodbury, on condition that he or they, or any of them, should not alien.  Parol evidence was refused to explain to whom he or they referred—Coke (5 Coke, 68), says: "It was a great inconvenience, that not any may know by the words of a will, what construction to make, if it might be construed by collateral averment out of the will.  Ram. on Wills, 33, (margin).  The same principle is laid down in *Carleton* v. *Turner*, 3 Atkins, 257; Ram. on Wills, 33; *Baylis* v. *Attorney General*, 2 Atkins, 239; *Hunt* v. *Hunt*, 3 Brown's C. C. 258.

A devise of all the testator's freehold lands in the county and city of L.  The testator had estates in the city, but none in the county of L., but had estates in the county of C.  It was held that it could not be proved by parol evidence, that the estates in the county of C. were devised in a draft of the will; but a mistake was made in the copy, which the testator did not observe.  *Miller* v. *Ivarees*, 8 Bingham, 244; 21 E. C. L. R., 288.

A devise for use of schools among the inhabitants of the north-west parish of Boxford, is void for uncertainty. *Barker* v. *Wood*, 9 Mass., 497.

A devise—I give my farm on Pomphret to the yearly meeting of people called Quakers of New England, the nett income to be appropriated in aid of the charitable fund of the boarding school established by friends in Providence.  In an action of ejectment by the heirs at law, it was held.  1. That the individuals composing the meeting

did not take; 2. That the yearly meeting, as a voluntary association, did not take; 3. That they could not take as a corporation, unless expressly authorized by their charter; 4. That the devise could not be sustained as a charity; and 5. That the subject devised descended to the heirs at law. *Green* v. *Dennis*, C. Con. 293.

A devise to the Baptist Association, (a voluntary association), to constitute a fund, &c., is void at law. It was the intention of the testator, that the association should take and execute a trust, in its character of an association. There being no particular persons designated, who are the objects of the testator's bounty, there are no beneficiaries to claim its execution. *Baptist Association* v. *Hart*, 4 Wheaton, 1. A bequest to trustees for such purposes as they consider might prove to be most beneficial to the town and trade of Alexandria, is void. *Wheeler* v. *Smith*, 9 Howard, 955.

A devise to executors to dispose of the residue of devisee's property, for the use of such a charitable institution as Pennsylvania and South Carolina may deem most beneficial to mankind, is void; *Fountain* v. *Rairnal*, 17 Howard, 369. This case overrules *Vidal* v. *Girard's Executors*.

A bequest in trust for such objects of benevolence and liberality as the trustee, in his own discretion, shall most approve, cannot be supported as a charity—and is therefore a trust for the next of kin. *Moore* v. *Bishop of Durham*, 9 Vesey, 399.

A will which contains no intelligible devise or bequest, is void; *Kelley* v. *Kelley*, 25 Pa. State, 460.

A will to the real distressed poor of Talbot county, Maryland, was held void for uncertainty. *Tupp* v. *Frazer*, 4 Har. & Johns. 446.

A devise to the poor children belonging to the Protestant Episcopal Church of Baltimore, is void for uncertainty. *Dashill* v. *Attorney General*, 5 Harris & Johns. 392.

A devise to the City of Baltimore, in trust for the relief and support of the indigent poor persons who may from time to time reside in the 12th ward of said city, is void, as being too vague and indefinite, and the property vests

in the next of kin, or residuary legatee; and their right vesting immediately, it is not competent for the legislator to direct them by a subsequent act.  *Wilderman* v. *City of Baltimore*, 8 Maryland, 557.

A devise to the poor, or deed to the poor, of a parish, is void.  19 Vermont, 615.

A devise to executors, to lay by two thousand dollars to be distributed among needy poor and respectable widows, held to be uncertain as to beneficiaries, and void.  *Galigor* v. *Attorney General*, 3 Leigh., 450.

A bequest: "I leave the whole of said funds in the hands of my executor, to be by him applied to the support of missionaries in India, under the direction of the General Assembly Board of Missions of the Presbyterian Church," is void for uncertainty.  *Presbyterian Church* v. *White*, Philadelphia Law Register, July 1856, 526.

A devise to the Education Society of Virginia, for the benefit of theological students at the Seminary near Alexandria, is void, for uncertainty.  Manuscript opinion of Taney.

A bequest of one thousand dollars, to be applied to foreign missions, and the poor saints, this to be disposed of and applied as my executor may think proper objects, &c., is too indefinite, and void.

To sustain a gift in trust by a testator, the trust itself must be valid, and to make it so, it must be in favor of such persons, natural or artificial as can legally take. The doctrine of *cy pres* does not obtain in this State.

A bequest for religious charity, must be to some definite purpose, or to some body or association of persons, having a legal existence, and with capacity to take.  *Bridges et al.* v. *Stephen Pleasants*, 4 Iredell's Equity, 26.  Now the Bishop of Dubuque and his successors, are mere trustees for the church or the poor.  Which?  What Church? What poor?  Can any answer be given, designating any particular person?  No deed or devise to A. B. *or* C. D. has ever been maintained in any court in the world, because the uncertainty is apparent, and in the language of

Ruffin, J., in the last case : "If the paper does not tell the testator's meaning, you can never find it out; and if he hath not sufficiently disposed of his property, it falls as a matter of course to his next of kin."

*S. Hempstead* and *W. T. Barker*, for the appellee.

The appellee insists : 1. That the defendant acquired a valid title from his grantors, who took title from the sale made by the sheriff. The District Court had jurisdiction to entertain and render the judgment against the administrators.   It was a court of general jurisdiction, possessing " chancery as well as common law jurisdiction."   Organic Act., S. 9.   Being a court of general jurisdiction, competent to decide on its own jurisdiction, and having jurisdiction of the persons of the administrators, its judgments, however *erroneous*, are not *void*, and its writs and processes, however *irregular*, are *only voidable;* and all its judgments and proceedings will be presumed regular.   The jurisdiction of the court to render the judgment is not questioned.   The authority to issue execution against the real estate of the decedent, is expressly given by the statute in force at the time the sale was made.    To hold the execution *void*, would be to reverse all the presumptions applicable to the proceedings of courts of general jurisdiction.    If the statute which requires notice to heirs before execution issues, is held to be inhibitory, instead of directory, this court must presume that the District Court had before it, at the time of issuing the execution, proof that such notice was given as required by the statute, until the contrary was made affirmatively to appear.   Suppose a judgment of the District Court is offered in evidence, which is silent as to service and appearance, in record entry, would this court hold it void ?   Certainly not.   The statute did not require a judgment to be rendered against the heirs, but simply an " award" of an execution on a former judgment.   Now, how does it appear that such award was not made.   The bill of exceptions contains no evidence tending to establish the contrary.

Lepage et al. v. McNamara.

This objection to the record, that it did not show such subsequent award of execution by the court, nowhere appears to have been made in the court below. The requests to charge that the " deed to defendant " was " void," are too general—the reason should have been assigned—and the objection should have been specifically pointed out.

A party seeking to divest title of valuable real estate, from an innocent purchaser, upon purely technical grounds, should be required to bring himself strictly within the law, and most strict practice. And we think, as the bill does not show that the whole record was given in evidence, or that any evidence was offered tending to show that such subsequent " notice " was not given and " award " made ; or that the plaintiffs raised the question of want of such notice and award on the trial, in such specific manner that this court can see that the court below actually passed upon the question, that this court will not allow the objection to overturn the judgment of the District Court. The court having authority to issue an execution against the land, any want of form would be simply an irregularity. The executions in question contained all the substantial requisites of a valid one, to-wit: names of parties—judgment—amount—when rendered—from what court issued—date of judgment, &c. The defendant stands at least in as favorable position as a *bona fide* purchaser, at a judicial sale ; and courts and legislatures are agreeing in opinions and acts in holding such sales valid. Our statutes upon that subject are simply declaratory of the common law.

The defendant having purchased after the sale, was only bound to look to the sheriff's deed on record, to divest the title of Lepage to the lands in dispute. It seems to us, that the deed from the sheriff appearing in evidence, every presumption of law is in favor of the defendant, and the burden of proof is at once shifted from the defendant to the plaintiff. Unless the presumptions, that courts and public officers have done their duty, be applied to cases like the one under consideration, they can seldom be of utility in establishing justice between parties. In regard to the

Lepage et al. v. McNamara.

sheriff's deed, no objection was made below, and we deem it not necessary to discuss its form. It is in proper form to convey, under such a sale as the statute directed.

The statute of 1843 clearly contemplates, that the care and custody of the real estate of the decedent, should belong to the administrators, until a final settlement of the estate. They are to return an inventory of all real and personal property'—are to give bonds—to account for proceeds of real estate—and expressly makes all debts of the decedent a lien upon the land. But we do not deem this a material question. It is true, in the absence of a will, the real property would descend to heirs, but subject and charged with all the debts of the estate—subject to be sold on execution, as in this case—and subject to be sold by the administrator for the payment of debts. It seems to us that the plaintiffs, even admitting that no proceedings were had, after rendition of judgment, and before issue of exetion, have failed to show the sheriff's sale to be wholly void—and if only voidable, then the sale must be held valid.

2. The will is valid. The trustee is identified with sufficient certainty. The beneficiaries are named sufficiently certain, within the principle decided in *Miller* v. *Chittenden*, 2 Iowa, 315. But admit that the beneficiaries are not named with sufficient certainty, to allow them to take under the will, and that the will conveyed only a naked power to sell the real estate, as claimed by the plaintiff, the power has been executed by the conveyance to the defendant, and the plaintiffs, if entitled to the property, must seek their remedy against the trustee. One part of the will may be void, and the remainder good. The execution of the power by the trustee, before any attempt was made to defeat the will, ought to protect the purchaser. The plaintiffs are not in a position to question the validity of the deed from the trustee to the defendant, by objecting to its form. The trustee is properly named as Matthias Loras; all else may be treated as matter of description of the person.

3. The plaintiffs cannot recover possession of the real

estate, while the estate remains unsettled. The statute of 1843 clearly contemplates, that the real estate may remain under the charge of administrators, until the final settlement of the estate.

4. The argument and authorities of the plaintiff's counsel, in relation to the will, all aim at proving Bishop Loras not to be a devisee, but a trustee, and they seem to mistake between an executed trust, and one not executed. See 12 Barb. 113. Many of the authorities cited apply only to direct proceedings to ascertain the construction of a will. But this subject has been discussed so fully by this court, that we deem it unnecessary to pursue it further.

The counsel says Mrs. Lepage died in 1843. The record shows no such fact—the time of her decease does not appear. The will was probated in 1841: the act of 1843 requiring trustees to give bond, was not then in force, and has since been repealed. It does not appear at what time Bishop Loras took upon himself the execution of his trust. And the act itself, (page 696, sec. 3), excepts a trustee from the duty to give bonds. Again, no such objection was urged below: *Cavender* v. *Heirs of Smith*, 1 Iowa, 307; *Fort* v. *Stevens*, 17 Wend., 483; *Cooper* v. *Sunderland*, 3 Iowa, 113; *Miller* v. *Chittenden*, 2 Iowa, 315; *Adamson* v. *Cummings*, 10 Ark., 541.

STOCKTON, J.—We first inquire whether the defendant acquired any title to the property in dispute, by virtue of the sheriff's deed to Simplot, and the subsequent conveyances from Simplot to Biron, and from Biron to defendant. At the death of Lepage, his administrators succeeded to his personal estate, and his real estate, undisposed of by will, descended to his heirs at law. The sale of the real estate, made by the sheriff, under an execution issued on a judgment against the administrators, passed no title to the purchaser, for the sufficient reason, that the administrators had no title or interest in the real estate of the decedent subject to sale. The statute in force at the time, provided that before the real estate of any testator or intestate should

be subject to execution upon any judgment against the executor or administrator, the heirs and devisees, if any, of the decedent, should first be made parties to the judgment. Upon application and proper showing to the District Court, that judgment has been obtained against any executor or administrator, to be levied of the goods and chattels of the deceased, and that execution issued thereon, remains unsatisfied, for want of personal estate, and that there is real estate of the deceased liable to the payment of the judgment, upon due notice to the heirs and devisees, unless good cause to the contrary be shown, execution may be awarded against such real estate, under which the interest and title of the heirs and devisees may be sold and conveyed by the sheriff to the purchaser. Act of 1839, 202, section 16; Act of 1843, 637, section 25; Code, 273, section 1918. The judgment, execution and sheriff's return, and sheriff's deed under which the defendant claims title in the premises, were given in evidence by him on the trial, and are made part of the record. The judgment was against the administrators of Baptiste Lepage. The execution gave no power to the sheriff to sell real estate, the title to which was in the heirs of Lepage, and not in his administrators. It did not run against the heirs, and it in no manner appears that they were made parties to the judgment, or that execution was awarded against them.

It is urged by the counsel for the defendant, that it was incumbent on the plaintiff to show that no award of execution was made by the district court against the heirs of Lepage, on the judgment against the administrators, before it will be held by this court, that the proceedings under the execution were void, or conveyed no title to the purchaser; and that in the absence of all proof upon the subject, this court will presume in favor of the regularity of the proceedings of the district court, and that such award of execution was made. While we do not dispute the correctness of the doctrine maintained by the counsel, as to the presumed regularity of the proceedings of the district court, we do not consider it applicable to the facts of this case.

The plaintiffs, to establish their right to recover the premises in dispute, offered evidence to show that Baptiste Lepage died seized of the premises, and that plaintiffs were his heirs at law and legal representatives. This entitled them, *prima facie,* to recover. The defendant undertook to show a better title, or that the title of the heirs, derived from their ancestor, had been divested in due course of law, and vested in himself. To do this, as he claimed title under a purchaser at a sheriff's sale, he must give in evidence a judgment and execution under which the property could be sold, and prove the sale of the premises, which may be done either by the sheriff's deed or the return on the execution. Adams on Ejectment, 272, note; *Fenwick* v. *Floyd,* 1 Harr. Gill, 172; *Cooper* v. *Galbraith,* 3 Wash. C. C. 546; *Fraker* v. *Brown,* 2 Blackford, 298; 12 Johnson, 213.

The defendant has introduced the judgment against the administrators of Baptiste Lepage, the execution and sheriff's return, and sheriff's deed to Simplot, with the subsequent conveyances, in order to show title in the premises in himself. This would be sufficient, if it had also been shown by him, either that the defendants in the judgment and execution, held the title of the property sold, or that the heirs of Lepage had been made parties, and were bound by the judgment. Nothing of this kind appears. The judgment and execution were against the administrators of Lepage, and not against his heirs, and although it appears that the execution commanded the sheriff to "cause to be made of the goods and " chattels, and for want thereof, *of the lands and tenements* of " James Fanning and Ezekiel C. Dougherty, administra- " tors of Baptiste Lepage, deceased," the amount of the judgment and costs recovered against them, yet this writ gave no power to the sheriff to sell real estate, the title to which was in the heirs of Lepage, and not in his administrators. Nothing appears from which we can infer, that the heirs and devisees of the decedent were made parties to the judgment. We cannot infer this from the fact that the execution commanded the sheriff, in default of goods

and chattels, to sell the lands and tenements of the defend-
ants as administrators; nor can we infer that execution had
been awarded against the real estate of the decedent de-
scended or devised to his heirs or devisees.   We are of
opinion, that the sheriff's deed conveyed no title to Sim-
plot, in the premises in dispute—and the subsequent deeds
from Simplot to Biron, and from Biron to defendant, are of
course inoperative.   The district court erred in refusing to
give the first instruction asked by plaintiffs, and in charg-
ing the jury that said deeds were good and sufficient as
against the plaintiff, and conveyed a valid legal title to
defendant.

We next proceed to inquire what title in the premises,
the defendant acquired by virtue of the conveyance from
Bishop Loras.   The conveyance expresses upon its face,
"that whereas, the said McNamara had purchased the prop-
"erty in good faith, had paid a good consideration there-
"for, and had made valuable improvements thereon; and
"whereas doubts had arisen whether the whole estate of said
"Baptiste Lepage in said premises, had been fully convey-
"ed to said McNamara; in order that justice may be done,
"and the title of said McNamara quieted, the said Mat-
"thias Loras, Bishop  of Dubuque, by virtue of the said
"will, and the power in him vested, and for the further con-
"sideration of ten dollars, conveys all his right, title, claim,
"and interest in the lot to the said McNamara."   The will
of Baptiste Lepage, after providing for the payment of all
his debts, contains the following provision:  "All the real
"estate of which I shall  die seized or possessed, shall fall
"into the possession of my wife Genevieve, for her own
"use and benefit during  her life-time; *at which time, I*
"*direct and authorize the Right Reverend Bishop Loras,*
"*or his successors, to dispose of my real estate, and apply*
"*so much thereof, to the church, or to the education and*
"*maintenance of poor children, as he, in his wisdom, may*
"*think proper and legal.*"   We remark, first, that this is
not an application to a court of equity, to establish a trust,
or to carry out the charitable purpose manifested by the

testator in his will.   The defendant, is asserting, in a court
of law, a legal title derived from Bishop Loras, in order to
defeat the estate, claimed to have descended to the plaintiffs
as heirs at law of the testator.   He will, of course, be enti-
tled to such consideration and relief only, as a court of law
can afford.   What interest in the real estate, did Bishop
Loras take under the will?   It is not claimed in the argu-
ment, that he took any beneficial interest.   The utmost
that can be maintained is, that the testator by his will, con-
ferred upon him a naked power to sell and dispose of his
real estate, upon the death of his wife, unaccompanied
with an interest.   Conceding this much, and waiving, for
the present, the consideration of the question, whether a
power to be exercised by "Bishop Loras, or his successors,"
is void for uncertainty as to the person who is to execute
it, and for uncertainty as to whether he is to execute it in
his official or individual capacity, the question whether the
legal title accompanied the power and vested in the Bish-
op, must be determined by another question, viz :—wheth-
er there is such a designation of the beneficiaries under the
trust, or such a dedication of the estate to charity as a court of
law will uphold and sustain ?  The difficulty arising from the
uncertainty as to the beneficiaries, must be apparent upon the
most casual reading of the will.   It is not expressed whether
the fund is to be applied to the church, or to educate and
maintain poor children; nor is any particular church, nor the
poor children of any particular church, city, or place, designa-
ted.    But even if this were ascertained, only so much of the
fund is to go to either the one or the other object, as the Bish-
op, "in his wisdom, may think proper and legal."   We are
clearly of the opinion, that there is here such uncertainty
in the beneficiaries, as must render the devise void.   Even
if the position assumed by the defendant, were true, that
the testator designed that the Bishop should take the legal
estate as trustee under the will, the difficulty is not re-
moved.   The Bishop took no beneficial interest, and the
*cestui que trust* not being sufficiently indicated, the devise
is void.   There is, in general, the same necessity for a

*cestui que trust*, capable of taking the beneficial interest, and so defined and pointed out, as that there shall be no uncertainty, as there is for a properly defined grantee in a deed. *Gallego's Ex.* v. *Att'y Gen'l*, 3 Leigh, 450. If there is such uncertainty, as that it cannot be known who is to take as beneficiary, the trust is void; and the heir, by operation of law, will take the legal estate, stripped of the trust. The testator appears to have had entire confidence in the wisdom of Bishop Loras. If, instead of leaving to the Bishop the duty of making his will, the testator had directed and authorized him to dispose of his real estate, and apply the proceeds thereof to the support of the Gospel, according to the ritual of the church of which he was Bishop, the devise would have been good, under the authority of *Johnson* v. *M. E. Church*, 4 Iowa, 180. If he had directed him to apply the proceeds to found an institution for the education and maintenance of the poor children of his church, there is little or no doubt but the devise would have been good. But the testator disposes of his estate for neither the one nor the other of these objects. He does not specify how much of his estate is set apart, or is intended so to be, for charity. It is to be so much as Bishop Loras, "in his wisdom, may think proper and legal." Not only is the Bishop to designate the amount to be disposed of in charity, but he is to say whether it is to go to the church, or to the poor children. Here is no expressed will of the testator. It is as though he had made no disposition of his estate. The wisdom of the Bishop, cannot be substituted for the will of the testator. He cannot be permitted to say, how much of the testator's estate may "properly and legally" go to charity, nor to decide for him, whether it shall go to the church, or to the education and maintenance of poor children. Whatever confidence the testator may have been willing to repose in the judgment of Bishop Loras, he must make his own will. And if he wishes to devote a portion of his estate to purposes of charity, he must point out the object, the property,

and the way it should go, or no trust is created which the courts can support and enforce.

In reference to the deed from Bishop Loras to defendant, we remark, that it was not made in virtue of any disposition of the real estate made by him under the will, nor to carry out the benevolent purpose of the testator, in favor of charity. On the contrary, it was made to ratify, as far as may be, an illegal and ineffectual sale of the property by the sheriff, on a judgment against the administrators. The deed is, therefore, not to be regarded as a conveyance of the estate, made to carry into effect the testator's purpose in favor of charity; and is not entitled to the effect sought to be given to it by the defendant's counsel, as the execution of a power vested by the will in the Bishop. A naked power, it is held, may be voluntarily executed; but it is only a power coupled with a trust, or beneficial interest, where the nature and objects of the trust are certain, or may be rendered certain, that will be enforced by a court of equity. *Moore's heirs* v. *Moore's devisees*, &c., 4 Dana, 359. Where there is nothing more than a power of appointment conferred by the testator, there is nothing on which a trust, on general principles, can be fastened. The power conferred in this case on Bishop Loras, may or may not be exercised by him, at his discretion. If he were to appropriate a part, or the whole, of the property to his own use, who is to call him to account for an abuse of the trust, or misapplication of the fund? He is to apply to one of the two objects of the charity, only so much as he may think "legal and proper." Who is to control his discretion, or correct the abuse of his power?

The rule is well settled, that wills are to be construed, so as to carry out the intention of the testator, so far as may be consistent with the rules of law; and if the entire will, and all its provisions, cannot be sustained, still to sustain and carry it out, as far as may be practicable. *Att'y Gen'l* v. *Wallace*, 7 B. Monroe, 617. When the intention is ascertained, it cannot be carried into effect by the prin-

ciples of the law, the court cannot do that which the testator might have done, and new model the provisions of the will. The duty of the court, (says Story, J. 3 Peters, 146), is to interpret, and not to make 'wills for testators. It is only from necessity, that a devise will be construed absolutely void for uncertainty. If it be possible to reduce it to certainty, it is good. Powell on Devises, 421; 3 Peters, 118. Looking at the will of Baptiste Lepage, and at the devise under which the defendant claims the property in dispute, by conveyance from Bishop Loras, the court cannot give any validity to the devise. If for no other reason, it is void for uncertainty.

1. It is uncertain what church is intended.

2. It is uncertain what poor children are intended to be the recipients of the testator's bounty. The poor children of no particular city, county, church or state, are designated.

3. If there were no difficulty in this respect, it is still uncertain whether the testator intended his bounty should go to the church or to the poor children.

4. It is uncertain how much is to go to the charity. Bishop Loras is to determine not only the object, but the amount of the fund it is to receive, and how much it is proper and legal should be so applied.

5. It is uncertain whether the Bishop is to administer the trust in his official or in his individual capacity, and whether the power is to be exercised by him or his successors.

It will hardly be profitable to institute an inquiry into the analogy between the present case, and those in which the chancellor in England, by the application of the civil law doctrine of *cy pres*, gives effect to gifts and devises, where only a general purpose of charity is manifested; or where either, the prescribed object, or the mode of applying it, has failed or become impracticable; or another class of cases, where no particular object is designated, and no trustee named, or person appointed, to select the object, and which are administered by the chancellor under the pre-

rogative power, and by virtue of an appointment of the crown, as *parens patriæ*. In either class of cases, unless the donor manifest an intention to restrict his bounty to some general object of charity embraced by the statute of 43 Eliz., chap. 4, the legacy or gift will be void, and neither the King nor the chancellor, can make any application of it. *Moggridge* v. *Thackwell*, 7 Vesey, 75.

Our courts of chancery have no other than judicial power, and consequently have no jurisdiction in the second class of cases above enumerated. The state cannot interfere as *parens patriæ*. If a testator ineffectually dedicates his property to charity, or in such manner that the devise is void, the state has no prerogative right to interfere and dispose of the property, as the King of England has been permitted to do. *Att'y Gen.* v. *United Ins. Co.*, 2 John. Ch. 386-7; *More's Heirs* v. *More's Devisees*, 4 Dana, 366. Even in England, it has been held that the chancellor, as a judge in equity, could not enforce a charitable trust, if according to the rules of the common law, it was either illegal, or void for indefiniteness, or vague generality. Nor could he, as such, apply the charity to any other purpose than that designated by the donor. He must be governed by the principles of the common law, respecting trusts, adopted from the civil law. Neither the crown, nor the chancellor under his delegated authority, could enforce or appropriate a charitable legacy or gift, which was not valid. Prerogative itself, could not violate the private legal rights of those who, by operation of law, were entitled to property which had been illegally dedicated to charity. See *Baptist Association* v. *Hart's Executors*, 4 Wheaton, 1; *More's Heirs* v. *More's Devisees, supra*. In the case last cited, ROBERTSON, C. J. delivering the opinion of the court, says: We are satified that the *cy pres* doctrine of England, is not, or should not, be a judicial doctrine, except in one kind of case; and that is, when there is an available charity to an identified or ascertainable object, and a particular mode, inadequate, illegal, or inappropriate, or which happens to fail, has

been prescribed. In such case, a court of equity may substitute or sanction any other mode that may be lawful and suitable, and will effectuate the declared intention of the donor, and not arbitrarily, and in the dark, presuming on his motives or wishes declare an object for him. 4 Dana, 366.

The principles set forth in the above observation, may be further illustrated by a reference to some of the adjudicated cases. A testatrix bequeathed the residue of her personal estate to the Bishop of Durham, to dispose of the same, "to such objects of benevolence and liberality, as the Bishop, in his own discretion, should most approve of." The court held the bequest void, on the ground that nothing was a charity, that was not within the letter and the spirit of the statute of 43 Elizabeth; and as objects of benevolence and liberality were not within the statute, they were too indefinite to be executed. *Morice* v. *Bishop of Durham*, 9 Vesey, 399. A testator bequeathed the residue of his estate to trustees, "for such purposes as they might consider promised to be most beneficial to the town and trade of Alexandria." It was held by the Supreme Court of the United States, that the devise could not be sustained, for the reason that the beneficiaries of the trust were uncertain, and the mode of applying the bounty indefinite. *Wheeler* v. *Smith*, 9 Howard, 55.

In *Fountain* v. *Ravenel*, 17 Howard, 369, the testator empowered his executors, after the death of his wife, to dispose of the residue of his estate, "for the use of such charitable institutions of Pennsylvania and South Carolina, as they might deem most beneficial to mankind." The wife survived the executors. It was held by the same court, that there was not only too great uncertainty as to the beneficiaries, but the more formidable objection, that there was no expressed will of the testator. Having substituted the will of his executors for his own, and they having died before they could make the appointment, the fund was never separated from his estate, but remained a part of it, unaffected by the bequest. See also *Kelley* v.

*Kelly*, 25 Pennsylvania State, 460; *Gallego* v. *Att'y Gen'l*, 3 Leigh, 450: *Wilderman* v. *City of Baltimore*, 8 Maryland, 557; Story's Equity, section 979. In *Wills* v. *Cowper*, 2 Ohio, 124, it is said, that "if a trust be created in a party, but the terms by which it is created, are so vague and indefinite that courts of equity cannot clearly ascertain either its objects, or the persons who are to take, then the trust will be held to fail entirely, and the property will fall into the general funds of the author of the trust." " So, where a testatrix bequeathed the residue of her estate to her executors, upon trust, to dispose of the same at such times, and in such manner, and for such uses and purposes, as they shall think fit, it being my will that the distribution thereof shall be left to their discretion," it was held void for uncertainty. Ib. section 979, B.

With these views of the law, as applicable to the present case, we are of opinion that no legal estate, or beneficial interest, passed to Bishop Loras, under the will, and consequently the conveyance by him of the property in dispute, passed no title to the defendant. The real estate of Baptiste Lepage, after the death of his wife, passed to his heirs, unaffected by the provisions of the will. The District Court, therefore, erred in refusing the second, third, and fourth instructions asked by plaintiff, and in charging the jury that Bishop Loras was a legatee under the will in his own right; that the proceeds of the real estate were devised to him absolutely; and that the conveyance by him to defendant, was good and valid against the plaintiffs. The judgment of the District Court will be reversed, and the cause remanded for further proceedings, not inconsistent with this opinion.

Judgment reversed.